F. B. BAYLOR, TRUSTEE, APPELLANT, v. HENRY J. HALL ET AL., APPELLEES; FOLSOM BAKERY ET AL., APPELLANTS.

FILED OCTOBER 14, 1921. No. 21433.

1. **Contracts: CONSTRUCTION.** In construing a contract, a court will give due force to the grammatical arrangement of the words and clauses, unless by so doing it appears to be at variance with the intention of the parties as indicated by the contract as a whole.

2. ———: ———. It is a general rule of construction, unless the intention of the parties appears otherwise, that a relative word

or clause will be construed as referring· to its nearest ante-
cedent.

3.  ────:  ────. The contract set out in the opinion construed,
and *held*, that the clause, "to be used in the liquidation of the
indebtedness of the said Lindell Hotel, existing on and prior to
August 1, 1916," refers to the nearest antecedent, namely, that
the accounts assigned to the Lindell Service Company should be
so used, and does not include the 48 shares of stock assigned to
Hall.

APPEAL from the district court for Lancaster county:
ELLIOTT J. CLEMENTS, JUDGE. *Reversed, with directions.*

*Fawcett & Mockett, Claude S. Wilson* and *C. L.
Clark,* for appellants.

*.C. C. Flansburg, T. J. Doyle, H. N. Mattley* and *P. R.
Halligan, contra.*

Heard before MORRISSEY, C.J., LETTON, DEAN and
DAY, JJ.

DAY, J.

This is an action in equity, somewhat in the nature of
an accounting, brought by F. B. Baylor, trustee for cer-
tain creditors of Robert W. Johnston, against. Henry J.
Hall, Lindell Service Company, a corporation, and Robert
W. Johnston. The action, in so far as it affected the de-
fendant Johnston, was based upon certain accounts due
and owing by Johnston to the creditors represented by
the trustee. The action, in so far as it sought to charge
defendants Hall and the Lindell Service· Company with
liability for the debts of Johnston, was based upon certain
contracts, reference to which will hereafter .be made.
After the action was commenced other creditors· of John-
ston were permitted to intervene, charging substantially
the same. facts as alleged by the plaintiff, and joining the
plaintiff in the relief prayed. The trial court found the
issues in favor of the plaintiff and the interveners, as
against the defendant Johnston, and rendered a judg-
ment against him for the amount found to be due the

plaintiff and the respective interveners. The trial court
further found the issues in favor of the defendants Hall
and the Lindell Service Company, and, as to these de-
fendants, the petitions of the plaintiff and the interveners
were dismissed. From the judgment in favor of Hall and
the Lindell Service Company, the plaintiff and the inter-
veners have appealed.

A brief reference to the circumstances leading up to
the making of the contracts will serve to a better under-
standing of the precise point in controversy. It appears
that for some years prior to August 1, 1916, Robert W.
Johnston had conducted the Lindell Hotel in the city of
Lincoln, Nebraska, and had become indebted in consid-
erable sums to various creditors. At that time he held
the title to the hotel property in his own name, but it was
incumbered by a mortgage for approximately the pur-
chase price. He was in arrears with the interest pay-
ment, and the mortgagees were considering taking steps
to repossess themselves of the property. Negotiations
were entered into between Hall and Johnston which re-
sulted in a contract between the parties dated August 1,
1916, by the terms of which they agreed to organize a
corporation to be known as the Lindell Service Company,
to succeed Johnston in the proprietorship of the Lindell
Hotel. Arrangements were perfected by which Johnston
was to deed the hotel property back to the original
owners, and they in turn were to lease the premises to
the Lindell Service Company for a period of ten years, no
rent to be paid for the first year. Under the agreement
Hall was to pay into the treasury of the corporation
$5,100, and was to receive therefor 51 shares of the capital
stock. Johnston was to transfer to the corporation the
provisions on hand, purchased for the operation of the
hotel, and also to turn over to the corporation a café owned
by him at Capital Beach, a pleasure resort near Lincoln,
for which he was to receive 49 shares of the stock in the
corporation. Johnston further agreed to assign one
share of his stock to an employee designated by Hall.

Pursuant to the agreement the corporation was organized and entered upon the operation of the hotel. The contract of August 1, 1916, recognized that Johnston was owing certain accounts incurred in the operation of the hotel, and in that behalf provided as follows: "It is further agreed that inasmuch as there are now certain bills owed to divers parties for provisions, laundry and other matters pertaining to the management and operation of the said hotel, to the present date, which are believed to be in excess of $11,500, the exact amount thereof is not known, that said bills will be paid from time to time, after current expenses are paid, from the revenues derived from the operation of said hotel, as rapidly as the revenues so derived will permit the payment of said bills. The money expended in the payment of said bills will be charged to the said Robert W. Johnston, and deducted from his share of the profits resulting from the operation of said hotel." Acting under this contract the Lindell Service Company paid out from time to time on Johnston's debts, up to April 11, 1917, the sum of $15,584.73. Through an error of the book-keeper the corporation had advanced on account of these debts several thousand dollars more than the net earnings of the corporation. An audit of the books then disclosed that Johnston's debts on August 1, 1916, amounted to approximately $33,000. Other complications arose in the affairs of the corporation, and Johnston, who had managed the hotel, took employment elsewhere. At this stage of the business affairs of the corporation, Hall and Johnston entered into another contract of date April 11, 1917. The provisions of this contract which bear upon the present controversy are paragraphs one, five, and six, and are as follows:

"1. That said Robert W. Johnston will assign to the first party (Henry J. Hall) forty-eight (48) shares of the capital stock in the Lindell Service Company, a corporation of Lincoln, Nebraska; will assign to said Lindell Service Company all unpaid bills and accounts receivable, now due the Lindell Hotel under the former management

of Robert W. Johnston, to be used in the liquidation of the indebtedness of the said Lindell Hotel, existing on and prior to August 1, 1916."

"5. First party (Hall) further agrees that the Lindell Service Company, at a meeting of its stockholders, will authorize, the making of a contract by said Lindell Service Company, a corporation, to assume and pay that certain indebtedness of Robert W. Johnston, described in a certain written agreement between Henry J. Hall and Robert W. Johnston, to incorporate the Lindell Service Company, dated August 1, 1916, pursuant to the terms of said written contract, as more fully set forth in said contract.

"6. First party further agrees that neither he, the said Henry J. Hall, nor the Lindell Service Company, will make any claims against the said Robert W. Johnston on account of advances made by said Lindell Service Company, in payment of the indebtedness of said Robert W. Johnston, incurred and existing prior to August 1, 1916."

Johnston complied with the terms of the contract. Hall took no steps to have the provisions of paragraph five of the contract carried out, but continued to operate the hotel until June 1, 1917, at which time he sold all the corporate property including the lease, realizing therefor, net, $7,480. With this sum he paid his note of $5,100, given for borrowed money to pay for his shares of stock, and used the balance in paying indebtedness of the Lindell Service Company. None of the accounts assigned to the Lindell Service Company under the provisions of paragraph one were collected.

The plaintiff, as well as the interveners, state that the whole question presented by the record turns upon the interpretation to be given to paragraph one of the contract of April 11, 1917. It is their contention that the contract requires that the 48 shares of stock assigned to Hall should be used by him in liquidation of Johnston's debts contracted prior to August 1, 1916, and it is argued that, inasmuch as Hall has converted the assets of the

corporation into money, therefore 48/100 of the net proceeds derived from the sale of the corporate property should be applied in the payment of Johnston's old debts. We are unable to agree with counsel in this interpretation of the contract. As we view it, the first paragraph of the contract does not mean that the 48 shares should be applied in payment of the debts. The phrase in the contract, "to be used in the liquidation of the indebtedness of the said Lindell Hotel, existing on and prior to August 1, 1916," refers only to the first antecedent, namely, that the assigned accounts should be so used. Ordinarily in construing a contract a court will give due force to the grammatical arrangement of the clauses, unless by so doing it appears to be at variance with the intent of the parties as indicated by the contract as a whole. The cardinal rule is to carry out, if possible, the intention of the parties. If a clause contained in a written contract would by grammatical construction have one application, and from the whole tenor of the instrument it is manifest that the parties to it intended it to have a more extended application, it will be construed according to the intended intention of the parties. Thus it is the general rule that, unless the intention appears otherwise, a relative word or clause will be construed as referring to its nearest antecedent. But where the context of the writing shows that the relative word or clause is not intended to apply to its nearest antecedent it will be construed in such a way as to carry out the intention of the parties. 6 R. C. L. 845, sec. 234.

Applying these general principles to the contract in question, it seems clear to us that the clause, "to be used in the liquidation of the indebtedness of the said Lindell Hotel, existing on and prior to August 1, 1916," refers only to its nearest antecedent, namely, that the accounts assigned should be so used. By paragraph five of the contract, Hall agrees that he will have the stockholders of the Lindell Service Company authorize the corporation to make a contract to assume and pay Johnston's indebted-

ness arising out of the former management of the Lindell Hotel, the same to be paid in accordance with the terms of the contract of August 1, 1916. By that contract the debts of Johnston were to be paid off from time to time after current expenses were paid from the revenues derived from the operation of the hotel, as fast as the revenues would permit, and that the money so paid out on bills was to be charged to Johnston's account. By the contract of April 11, 1917, Hall and the Lindell Service Company agreed to waive any claim against Johnston by reason of the advances so made. While we are of the view that the contract does not require that Hall should use the 48 shares of stock in the payment of Johnston's old debts, it is quite apparent, we think, that Hall has breached the contract. He made no effort to have the stockholders authorize the Lindell Service Company to assume and pay Johnston's old debts out of the revenues derived from the conduct of the business after deducting current expenses. This he could easily have done, because he owned 99 shares of the stock, and controlled the other share. On the contrary, within six weeks after acquiring the stock, he sold all of the corporate property, and thus effectively put it out of his power to fulfil the contract. From the record before us we are unable to determine whether there were any profits after deducting current expenses arising from the conduct of the business between April 11 and June 1, 1917, at which time Hall disposed of the corporate property. Neither is there testimony from which we could draw a conclusion as to what, if any, damages would reasonably follow from Hall's breach of the contract. It was evidently the intention of the parties that the Lindell Service Company should continue operating the hotel, and it was not contemplated that the corporate property would be sold. In this state of the record, we hold that there is not enough before us upon which we can base a judgment for more than nominal damages, arising from the breach of the contract. We think, however, in view of

the breach of the contract by Hall, he should be charged with nominal damages at least, as the law presumes some damage to follow from a breach of a contract.

The judgment of the lower court is reversed, and the cause is remanded to enter judgment in favor of the plaintiff and interveners for nominal damages, and for costs.

REVERSED.

FLANSBURG, J., not sitting.