AUGUSTA BAUMGART, APPELLEE, v. SOVEREIGN CAMP, WOODMEN OF THE WORLD, APPELLANT.

FILED NOVEMBER 20, 1934. No. 29016.

*De E. Bradshaw, J. M. Sturdevant, Rainey T. Wells* and *George Yeager,* for appellant.

*James Nichols* and *Nelson C. Pratt, contra.*

Heard before GOSS, C. J., ROSE, EBERLY, DAY and PAINE, JJ., and REDICK, District Judge.

EBERLY, J.

Plaintiff brought this action as beneficiary of an "Ordinary-Whole Life Certificate" issued by defendant on the life of plaintiff's husband, Carl Baumgart, now deceased. A trial in the district court for Douglas county to the court, a jury being waived, resulted in findings and judgment for the plaintiff as prayed. From the judgment of the district court defendant appeals.

Appellant is a fraternal benefit society. On January 6, 1913, it issued to Carl Baumgart, beneficiary certificate No. "42802 Nebr.," in the sum of $1,000 if assured should die during the first year of his membership, $1,500 if his death should occur during the second year, and $2,000 if assured's death took place after the completion of two years of membership in the society. Some time after the issuance of this policy, the defendant changed its methods

and commenced the issuance of policies of different terms. One of these forms is a policy which it denominated the "Ordinary-Whole Life Certificate." The plans of the society, as evidenced by their by-laws, contemplated the voluntary transfer by its membership from the form of insurance previously issued by it to the new form, but at an increased rate. Accordingly, on August 9, 1929, Carl Baumgart executed an application, on a blank provided by the defendant, for "exchange of certificate," which set forth that he, as holder of benefit certificate No. 42802, desired to exchange it for an "Ordinary Life Certificate" in the sum of $2,000. This application contained the following stipulations:

"The new certificate is to become effective on the first day of Aug. 1929, and to bear the date of Aug. 1st, 1925, and age of 53. It is understood and agreed that withdrawal values, if any, on the new certificate will be available to me only after I have made payments on said new certificate for three full years from date thereof. First payment on new certificate is for the month of Aug., and I warrant that all the required payments on my present certificate have been paid up to the first of the month for which said first payment is made. * * * I hereby certify that I was born on the 16th day of Dec. 1872. In consideration of such exchange I hereby surrender my said benefit certificate to the Sovereign Camp of the Woodmen of the World, and I hereby, for myself and my beneficiaries, and for any one claiming any right in, through or on account of said certificate, release said Sovereign Camp of the Woodmen of the World from any and all liability thereunder, and I agree to abide by the laws of the Sovereign Camp of the Woodmen of the World as they now are or may hereafter be amended. I certify, warrant and represent that I am in good, sound bodily health, and that there is nothing in my habits or condition that is likely to impair my health or shorten my life. I agree this representation is a strict warranty, and that if the same shall

prove in any respect untrue, or if my death occurs within one year from the date hereof as the result of any disease from which I am now afflicted, none of my beneficiaries shall be entitled to receive benefits on account of the new certificate, but instead will be entitled only to such benefits as may be due under my present certificate."

All dates appearing in this application are in writing.

Thereupon, "in consideration of the warranties and agreements contained in the original application therefor, the application for exchange of certificates, and in further consideration of the payment to the association of the sum of $7.84 for the month in which this certificate is dated," and other payments to be made as therein stipulated, the defendant issued to the insured the "Ordinary-Whole Life Certificate," No. RW-923478-L, which is the policy in suit.

In the upper left-hand corner of the first page of the policy is set forth, "age 53," and upon the first page immediately above the signature appear the words, "The nonforfeiture values shall be computed as if this certificate had been issued on the 1st day of Aug., 1925. Issued at Omaha, Nebraska, this 23d day of Aug. 1929." These two dates are filled in in typewriting.

On page 2 of this policy, it is stated:

"2. Cash Surrender, Loan Value, Paid-Up and Extended Insurance: After thirty-six monthly payments on this certificate shall have been made, should the member fail to pay any subsequent monthly payment, the member, within three months after due date of the monthly payment in default, but not later, upon written application and legal surrender of this certificate, may select one of the following nonforfeiture options: Option (a). The cash surrender value set forth in column 1 of table A on page 3 hereof for the period to the end of which premiums have been paid in full. Option (b). A paid-up certificate for the amount set forth in column 2 of table A on page 3 hereof for the period to the end of which premiums have been paid in full. Option (c). Extended insurance from such due date, for the amount of the death benefit on page

1 hereof, but without total and permanent disability bene-
fits, for the period specified in column 3 of table A on page
3 hereof for the period to the end of which premiums have
been paid in full. If there be any indebtedness against
this certificate, the cash surrender value set forth in
column 1 of table A on page 3 hereof shall be reduced
thereby, and the value of the options above named shall
be decreased proportionately.

"3. Automatic Premium Loan: After thirty-six monthly
payments on this certificate shall have been paid, if any
subsequent monthly payment be not paid on or before its
due date, and if the member has not, prior to such due
date, selected one of the options available under the non-
forfeiture provisions of this certificate, the association will,
without any action on the part of the member, advance
as a loan to the said member the amount of the monthly
payments required to maintain this certificate in force
from month to month until such time as the accumulated
loans, together with compound interest thereon at the rate
of five per cent. per annum, and any other indebtedness
hereon to the association, equal the cash value hereof at
the date of default in the payment of the monthly pay-
ments. When the said cash value has been consumed in
loans advanced and interest thereon, then this certificate
shall become null and void; provided, that while this cer-
tificate is continued in force under this provision, the
member may resume the payment of monthly payments
without furnishing evidence of insurability, and the ac-
cumulated loans and interest thereon shall become a lien
upon this certificate and shall continue to bear interest at
the same rate. Provided further, that such lien may be
paid in whole or in part at any time by the member, but
if not paid said loan and accumulated interest thereon
shall be deducted upon any settlement with the member,
or from the amount payable at the death of the member."

The table referred to in these paragraphs quoted, so far
as material to the questions presented, is as follows:

"Table A.

| End of Certificate Year | Cash Value or Loan Value | Paid-Up Insurance | Extended Insurance Years | Days |
|---|---|---|---|---|
| 3rd | $ 49.15 | $ 91.00 | 2 | 199 |
| 4th | 75.21 | 136.00 | 3 | 221 |
| 5th | 101.53 | 179.00 | 4 | 183 |
| 6th | 128.07 | 221.00 | 5 | 91 |
| 7th | 154.79 | 262.00 | 5 | 317." |

All accruing dues upon this policy were paid without question up to and including June, 1931. Whether the dues for July, 1931, were paid in that month is a controverted question. However, we are satisfied that the preponderance of the evidence sustains plaintiff's contention that the July, 1931, dues were paid by the assured on July 13, 1931. It would follow that the suspension of Baumgart in August, following, was wrongful and unjustified. But there were no payments of dues, as they accrued, from August, 1931, to February, 1932, inclusive. The validity of a payment of $64.88 on March 8, 1932, being a payment in full of the dues that accrued between August, 1931, and February, 1932, both inclusive, is challenged. The assured died on the 10th day of March, 1932.

Upon the pleadings and testimony the plaintiff contends that the assured, at the time of his death, was entitled to have the nonforfeiture values set forth in the certificate applied to the payment of the instalments accruing thereon, and they were sufficient to pay all unpaid instalments as they accrued.

On the other hand, the defendant contends, upon the record before this court, that the cash surrender, loan value, and paid-up and extended insurance provisions were only available to the assured after 36 monthly payments had been made on the new certificate, and that the date of issue for the purpose of cash surrender, loan value, paid-up and extended insurance, as well as the "automatic premium loan," was August 23, 1929. Under the state of facts reflected by this record, we believe that plaintiff's

contention is correct, and that there was no error in the judgment.

While the record before us presents a number of questions, we feel that the solution of one question properly disposes of the issues presented for decision, and the others discussed in the brief are not essential to the determination of the case.

The controlling question appears to be: Did the district court commit error in holding in effect that the nonforfeiture values and automatic premium loan value, referred to in the certificate of insurance, were available on and after August 1, 1928 (three years from August 1, 1925), and in refusing to hold that such automatic premium loan value was available only after 36 monthly payments had been made on the new certificate after the date of its issuance at Omaha, Nebraska, to wit, August 23, 1929? We think the interpretation of the trial court was proper.

In Richards, Law of Insurance (4th ed.) 114, sec. 74, the following principle is found: "The assured ordinarily has no part in the preparation of the policy. No rule of interpretation of an insurance contract is more firmly embedded than that which declares that where the language of the policy is without violence susceptible of two interpretations, one of which being that contended for by the insured, it should be most strongly construed against the insurer for the language is that of the insurer."

In *Thompson v. Phenix Ins. Co.,* 136 U. S. 287, 297, we find: "If a policy is so drawn as to require interpretation, and to be fairly susceptible of two different constructions, the one will be adopted that is most favorable to the insured. This rule, recognized in all the authorities, is a just one, because those instruments are drawn by the company. *National Bank v. Insurance Co.,* 95 U. S. 673, 678." See, also, *Allgood v. Insurance Co.,* 186 N. Car. 415, 30 A. L. R. 652.

And again, in *Mutual Life Ins. Co. v. Hurni Packing Co.,* 263 U. S. 167, we find the following statement: "The rule is settled that in case of ambiguity that construction of the

policy will be adopted which is most favorable to the insured. The language employed is that of the company and it is consistent with both reason and justice that any fair doubt as to the meaning of its own words should be resolved against it. *National Bank v. Insurance Co.*, 95 U. S. 673, 678; *Thompson v. Phenix Ins. Co.*, 136 U. S. 287, 297; *Imperial Fire Ins. Co. v. Coos County*, 151 U. S. 452, 462." See, also, *Funke Estate v. Law Union & Crown Ins. Co.*, 97 Neb. 412; *Connecticut Fire Ins. Co. v. Jeary*, 60 Neb. 338.

So, too, the following statement appears in 1 Couch, Insurance, 372, sec. 183: "Contracts of insurance are generally recorded on printed forms containing blanks for the insertion of such special provisions and conditions as the parties may agree upon, the printed parts ordinarily being largely general in nature and consisting of stipulations and provisions which apply to most cases, and have obtained a settled judicial construction. Consequently, the written parts become the immediate and chosen language of the parties to a contract, and, although they should be construed together with the printed clauses, and reconciled with them if possible, so as to give effect to every part of the contract, yet, if the printed and written clauses are repugnant to each other and cannot be reconciled, the written parts, having been especially chosen for the occasion to express the agreement of the parties, will be given effect over the more general printed ones." See, also, 1 Joyce, Insurance (2d ed.) sec. 223; *Thomas v. Taggart*, 209 U. S. 385; *Hagan v. Scottish Ins. Co.*, 186 U. S. 423.

When the controlling provisions of the certificate of insurance in suit and the application for an exchange of certificates to which it refers are examined in the light of the foregoing authorities, it would seem quite evident that "withdrawal values" and "nonforfeiture values" are not terms of identical meaning. Had they been identical in definition, but one of the terms would have been employed. The intent of the defendant, whose representatives drafted this application for exchange of certificates of insurance,

is plain. The new policy was to be effective August 1, 1929, to bear date August 1, 1925, and age of 53. The assured, 53 years old on August 1, 1925, was to have an antedated policy of that date, and the conclusion also follows that its language was in all respects to be construed as a policy issued of that date, except and to the extent only that other provisions contained in such application were inconsistent therewith. No provision in this application contemplated that the new certificate should bear any other date than that of August 1, 1925. True, the certificate of insurance to be issued on this application was effective August 1, 1929, but it was in fact a policy paid up until that date. This was not the result of a gratuity on the part of the insurer. The stipulation in the record is that under the policy first issued, and prior to the issuance of the certificate in suit, Carl Baumgart had paid to the association (as premiums) a sum sufficient "such that after paying his equitable share of the death claims every year that a balance remained on hand at the time of transfer, which is August 1st, 1929, which enabled the Woodmen of the World to put up a reserve for him at the end of the transfer year amounting to $207.06." All rights under his old certificate were expressly waived by him when the new one was accepted. While the sum thus waived was in the nature of an accumulated actuarial credit existing for the benefit of the old certificate, it would seem that in good morals he was entitled to have it applied on the new certificate. This is plainly what the transfer as made endeavors to accomplish. The stipulation that all "nonforfeiture values shall be computed as if this certificate had been issued on the 1st day of Aug., 1925," accomplishes this fact. This right thus vested in Baumgart by contract has subsequently been accorded legislative recognition by chapter 85, Laws 1931, providing in part:

"Any member of a beneficiary association or society holding a certificate therein and who desires to surrender such certificate in exchange for any other form of certifi-

cate issued by such association or society, shall, by taking such new certificate, not lose his accumulated actuarial credit in the funds of the association, but he shall be entitled to the transfer of such funds to the amount of such credit to the funds held for the benefit of such new certificate and shall be entitled to a deduction justified by such credit upon the assessments and payments he shall be required to make for such new certificate."

In the instant case by contract the parties in interest have recognized and provided for the rights which the statute, subsequently passed, formally recognized and secured. The effect of the contract, as we understand it, is exactly as if the premiums which would have accrued on a policy issued on August 1, 1925, had been paid in cash up to August 1, 1929.

The only computation of nonforfeiture values set out in this contract, or under its authority, is table "A" above quoted from. It will be noted that this table provides three columns of computation which are called nonforfeiture options. The values are dependent upon the number of the certificate year. It is conceded that if the certificate of insurance in suit had been actually issued on August 1, 1925, and the premiums paid to and including August 1, 1929, the nonforfeiture value would have been such as automatically to extend the insurance to a date beyond the date of assured's death. Does the policy, as issued, have that effect? Such indeed must have been the intention of the parties, and such is the force and effect of its language, taken by itself.

Appellee insists that the application in plain language shows that it means after 36 monthly payments have been made after the issuance of the new certificate. But the application does not state that the monthly payments for three full years shall be made after the issuance of the certificate of insurance, but "after I have made payments on said new certificate for three full years from date thereof," and at the same time fixes "the date thereof" as August 1, 1925. So, too, the automatic premium loans

become effective by the terms of the certificate of insurance after 36 monthly payments shall have been made. This language is identical with that employed by the other nonforfeiture provisions. The language of the policy in this respect is: "The nonforfeiture values shall be computed as if this certificate had been issued on the 1st day of Aug. 1925."

Construing the application for exchange of policies and the policy in suit, in the light of the surrounding circumstances, and in view of the obvious intention of the parties, as fairly expressed, we are of the opinion that in July and August, 1931, the nonforfeiture values were available to the insured in sufficient amount to discharge all premiums thereafter falling due on and prior to the date of the death of assured, and that the association was automatically required, by the terms of the contract, to make the proper application thereof.

In this conclusion we are in accord with the unanimous views of the courts of other jurisdictions that have been called upon to construe the "form of policy" presented in this case.

The terms of the policy here in suit, containing the clause above quoted, were presented to the court of appeals of Missouri in the case of *Daly v. Sovereign Camp, W. O. W.,* 226 Mo. App. 629. In that case the court employed the following language:

"What then is the meaning of the contract? It will be observed that while the new certificate is to become effective on June 1, 1929, it is to bear the date of June 1, 1926, three years earlier. Also that withdrawal values, if any, are to be available to insured after he has made payments for three full years from date of application; while nonforfeiture values shall be computed 'as if this certificate had been issued on the 1st day of June, 1926.' There must be a difference between withdrawal values and nonforfeiture values, else why use different names for them? The first are allowable to insured alone while he is yet alive. The second are of advantage to insured merely in

keeping his insurance alive by having the unpaid instalments taken out of the amount otherwise due on the certificate after he is dead; and of these the beneficiary receives the benefit. So far then as concerns the above clause calling for payment 'for three full years' from date of the application, it would seem to refer merely to the withdrawal privileges available to insured only, and not to the keeping of the insurance alive for a certain period while insured is living or to the rights of the beneficiary after insured's death.

· "As to the clauses 'after thirty-six payments,' etc., in the other provisions mentioned, what effect is produced on them by the provision that the certificate, though issued on June 1, 1929, is to be dated June 1, 1926, and the provision that the nonforfeiture values shall be computed as if the certificate had been issued on June 1, 1926? Certainly these unusual provisions perform some function, and what else can they do except to modify and govern the 'full three years' and the 'thirty-six monthly payments' clauses? It is too narrow a construction to hold that the clause saying the nonforfeiture values shall be computed as if the certificate was issued on June 1, 1926, merely refers to the elements or basis of the computation to be made in case there is legally anything to be computed. As we view it, this clause governs not only the basis and elements of the computation of the amount due, but, together with the one in relation to the date of the certificate, also governs and settles the question of whether there is legally anything to be computed. It means that the certificate is to be treated as if it had been issued on June 1, 1926, and this bears not only on the question of how the computation should be made but also on whether any computation whatever should be made. If the clause now under consideration does not include and govern both of these matters, then there is no clause affecting the provision that the policy is to be regarded as issued on June 1, 1926, so as to take away the effect it would otherwise have on the question whether the certificate is to be regarded as alive when insured died."

It may also be said that the identical policy provisions of the certificate of insurance here in suit were considered and determined adversely to the contentions of appellant in the instant case in the following cases: *Jones v. Sovereign Camp, W. O. W.*, 67 S. W. (2d) (Tenn.) 159; *Higgins v. Sovereign Camp, W. O. W.*, 224 Ala. 644; *Sovereign Camp, W. O. W., v. Hardee*, 188 Ark. 542. See, also, as in principle fully sustaining the doctrines of the cases cited, *German Beneficial Union v. Weinfurtner*, 128 Ohio St. 173.

In view of the entire record, in the light of the trend of the authorities cited, we are convinced that the disposition of this case, as made by the trial court, is correct.

The judgment of the district court is, therefore,

AFFIRMED.