109 N.W.2d 115 (1961)
172 Neb. 190
U. P. TERMINAL FEDERAL CREDIT UNION, a Corporation, Appellant,
v.
EMPLOYERS MUTUAL LIABILITY INSURANCE COMPANY OF WISCONSIN, a Corporation, Appellee.
No. 34933.
Supreme Court of Nebraska.
May 5, 1961.
*116 Albert C. Walsh, Omaha, for appellant.
Fraser, Wenstrand, Stryker, Marshall & Veach, Omaha, for appellee.
Heard before CARTER, MESSMORE, YEAGER, SPENCER and BOSLAUGH, JJ.
YEAGER, Justice.
This is an action by U. P. Terminal Federal Credit Union, a corporation, plaintiff and appellant, against Employers Mutual Liability Insurance Company of Wisconsin, a corporation, defendant and appellee, to recover a judgment for $1,755, with interest, expenses, a reasonable attorney's fee, and costs. In the action the plaintiff filed a petition to which the defendant filed a general demurrer in which it was asserted that the petition does not state sufficient facts to constitute a cause of action. This demurrer was sustained. The plaintiff *117 elected to stand on its petition and not to plead over. The action was thereupon dismissed. The plaintiff in due course appealed from the judgment of dismissal.
To the extent necessary to set forth herein, the plaintiff in its petition defined the respective capacities of the parties and then alleged that on June 26, 1952, the parties entered into a "Credit Union Chattel Lien Nonfiling Bond" which was marked exhibit A and attached to and made a part of the petition; that on March 9, 1955, one Archie R. Tietsort gave a promissory note in the sum of $1,950, secured by a chattel mortgage on an automobile, to the plaintiff on which payments of $65 each for the months of April, May, and June were made; that in June 1955, the plaintiff discovered that the automobile had been removed from Douglas County, Nebraska, and its whereabouts did not become known until about June 1958, when it was found in Rawlins, Wyoming, totally wrecked, and against it there were storage charges in excess of its salvage value; that there has been and is due plaintiff from Tietsort $1,755 with interest; and that plaintiff was prevented from obtaining possession of the automobile, and therefore within the meaning of paragraph I of that part of exhibit A designated "Insuring Agreements" the plaintiff is entitled to recover judgment with interest, expenses, an attorney's fee, and costs from the defendant.
Paragraph I is as follows: "I. COVERAGE. To indemnify the insured for any loss sustained by reason of having in good faith and in the usual course of business purchased, taken, received, made advances on, made loans against or extended credit upon an instrument, as hereinafter defined, but only insofar as the loss results from the insured being prevented from (1) obtaining possession of the property represented by such instrument or retaining the proceeds thereof, or (2) enforcing its rights under such instrument, solely as the result (a) of the failure of the insured or the insured's representatives duly to record or file the instrument with the proper public officer or public office, or (b) of the failure of the insured or the insured's representatives duly to have the proper public officer or public office show the insured's encumbrance on the instrument, or (c) of errors or omissions in the instrument which has been duly recorded or filed with the proper public officer or public office or upon which the proper public officer or public office has shown the insured's encumbrance."
The question of whether or not the judgment of the district court was erroneous, as is contended by the plaintiff, depends upon what was embodied in paragraph I as the intention of the parties when exhibit A was issued to the plaintiff by the defendant.
It is clear that there was a declared intent of the parties that the defendant was to indemnify the plaintiff for loss in the event the plaintiff had purchased, taken, received, made advances on, or made loans against or extended credit on an instrument or instruments, subject to certain conditions.
The plaintiff contends substantially that its petition stated a cause of action and was not subject to general demurrer since it declared only that it was prevented from recovering the automobile. It contends that these conditions constituted the measure of its right of recovery and that the instrument contains no other provisions which would amount to a bar.
On the other hand the substantial contention of the defendant is that the petition is invalid for the reason that conditions other than and in addition to those advanced by the plaintiff have not been pleaded which are indispensable to a right of the plaintiff to recover indemnity from the defendant, and therefore the petition fails to state a cause of action and is vulnerable to a general demurrer.
The other conditions, one or more of which the defendant insists must attend the *118 prevention from obtaining possession of the property represented by the instrument, are (a) failure of the insured, that is the plaintiff or its representative, to duly record the instrument received from the party from whom the instrument was taken, (b) failure of the plaintiff or its representative to have the proper public officer or office show the plaintiff's encumbrance on the instrument, or (c) errors or omissions in the instrument which had been filed with the proper public officer or office showing the insured's encumbrance.
It is true, as is apparent from an examination of the quoted paragraph I, that the conditions upon which the defendant insists are contained there. The plaintiff however urges that they have no reference whatever to a situation such as this where indemnity is claimed on account of the alleged fact that it was prevented from obtaining possession of the automobile described in the instrument it had received from Tietsort. It contends substantially that if for any reason it was unable to obtain possession the defendant is liable. It is pointed out here that all of the conditions urged by the defendant were nonexistent. The only reason given as the basis for recovery is inability to locate the automobile.
If the contention of the plaintiff is to be accepted it is of course true that the judgment of the district court was erroneous. Whether or not it is to be accepted depends upon the true intent of the parties to the instrument at the time it was executed and became effective. This intent must be gleaned from the contract itself. The process includes of course the reasonable inferences and implications which flow from the language employed.
A cardinal principle of construction of written instruments is that an interpretation shall be made which will reflect the true intention of the parties. See Baylor v. Hall, 106 Neb. 786, 184 N.W. 886.
Another principle to be recognized is that ordinarily in construing a contract a court will give due force to the grammatical arrangement of the clauses, unless by so doing it appears to be at variance with the intent of the parties as indicated by the contract as a whole. See Baylor v. Hall, supra.
Another statement of principle is that if a clause contained in a written contract would by grammatical construction have one application, and from the tenor of the whole instrument it is manifest that the parties intended it to have a more extended application, it will be construed according to the manifest intention of the parties. See Baylor v. Hall, supra.
The parties to this action have treated it as one based on a contract of insurance. With particular reference to interpretation of contracts of insurance this court has announced a number of admonitory rules.
In Coad v. London Assur. Corp., 119 Neb. 188, 227 N.W. 925, it was said: "Where an insurance policy by its insuring clause clearly covers an article, and an exemption clause does not clearly exclude it, the policy, being strictly construed against the company preparing it, will be held to cover said article." See, also Paltani v. Sentinel Life Ins. Co., 121 Neb. 447, 237 N.W. 392; Woodring v. Commercial Casualty Ins. Co., 122 Neb. 734, 241 N.W. 285; Baumgart v. Sovereign Camp, W. O. W., 127 Neb. 865, 257 N.W. 269; Updike Investment Co. v. Employers Liability Assur. Corp., 131 Neb. 745, 270 N.W. 107; Howie v. Cosmopolitan Old Line Life Ins. Co., 132 Neb. 367, 272 N.W. 207.
In this last-cited case the court quoted the following with approval from 14 R.C.L., Insurance, s. 103, p. 931: "But the rule is equally well settled that contracts of insurance, like other contracts, are to be construed according to the sense and meaning of the terms which the parties have used, and if they are clear and unambiguous, their terms are to be taken and understood *119 in their plain, ordinary, and popular sense."
In Moffitt v. State Automobile Ins. Ass'n, 140 Neb. 578, 300 N.W. 837, 838, it was said: "Plaintiff contends for the rule that in case of ambiguity or uncertainty the meaning thereof should be resolved against the insurer, it being the one who prepared the contract. As a principle of law, the statement is correct. But the court must not indulge in scholastic subtleties to make words with certainty of meaning ambiguous in order to apply the rule. In the words of the late Judge Sanborn: `This rule ought not to be permitted to have the effect to make a plain agreement ambiguous, and then to interpret it in favor of the insured.'"
In the light of these rules exhibit A, in its entirety, and not alone paragraph I thereof, must be examined in order to ascertain the intent of the parties. This examination discloses that the insurance is of an instrument received by plaintiff from a third person which if in proper form and recorded or filed would evidence or create or reserve a lien or interest in or on property of the third person in the plaintiff. This is declared by paragraph II of that portion of exhibit A denominated "Insuring Agreements."
There is nothing in exhibit A the effect of which is to say that liability depends upon any kind of act or failure to act on the part of the third party, who is in this case Tietsort, except as to the validity of the instrument itself, after the instrument has come into the hands of the insured, in this case the plaintiff.
Specifically, liability under the terms of exhibit A attaches only if the plaintiff itself or its representatives fail to file the instrument with the proper public officer or office; or fail to have the proper public officer or office show the plaintiff's encumbrance on the instrument received from the third party, here Tietsort; or that it shall appear that there were errors or omissions in the instrument itself, here the mortgage from Tietsort to the plaintiff, which had been duly recorded or filed with the proper public officer or office.
In this there is no ambiguity. In specific terms the insurance contract or bond states that the defendant will respond if the plaintiff is prevented from (1) obtaining possession of the property, or (2) enforcing its rights under the instrument solely as the result of the conditions named under (a), (b), or (c) of paragraph I of exhibit A.
Coupled with what has already been said as to the wording of the declared purpose and intent of the contract or bond is the title which supports it. The title is "Credit Union Chattel Lien Nonfiling Bond." Also it appears that the estimated annual rate of premium on the Tietsort instrument has some significance. It was only 40 cents. This is of course not conclusive on any question of intent, but this is a pleaded part of the transaction between plaintiff and defendant, and is a circumstance to be considered in determining the intent of the parties with regard to the extent of the risk. Reasonably it would be unlikely that the defendant would assume such a possible liability as the plaintiff seeks to impose in this action for a premium in this amount.
The plaintiff has failed by its petition to state facts sufficient to constitute a cause of action against the defendant within the meaning and intent of the "Credit Union Chattel Lien Nonfiling Bond" which is the basis of this action.
The judgment of the district court is therefore affirmed.
Affirmed.
SIMMONS, C. J., participating on briefs.