HEWIT PHARMACIES, INC., Plaintiff, *v.* ÆTNA LIFE INSURANCE COMPANY, Defendant.

Supreme Court, Broome County, August 18, 1933.

*Mangan & Mangan* [*Thomas J. Mangan* and *Frank J. Mangan* of counsel, present], for the plaintiff.

*Lee, Levene & McAvoy* [*David Levene* of counsel, present], for defendant.

McNAUGHT, J. The question which is decisive of the issue between the parties is whether the policy issued by defendant covered the transaction as a result of which the death of Anna V. Lynn occurred. The defendant had issued a druggists' liability policy. It was a contract between the parties. Each must be governed by its terms. The rights of the parties must be determined by the provisions of the contract which the defendant issued and the plaintiff accepted. It is not a question of what the plaintiff assumed, or what the plaintiff believed was covered in connection with the conduct of its business.

It is well established that where the language of an insurance contract is so ambiguous as to render it susceptible of two interpretations, it should be construed most strongly against the insurer, because the latter has prepared the contract and is responsible for the language used. (*Janneck* v. *Met. Life Ins. Co.*, 162 N. Y. 574; *Killian* v. *Metropolitan Life Ins. Co.*, 251 id. 44.) "Words may in themselves be ambiguous yet have a clear meaning when read in the light the context affords. When the meaning of the contract appears, it is the duty of the court to make it effective even when the words have been selected by an insurance company. (*Hartigan*

v. *Casualty Co.*, 227 N. Y. 175, 179.) Construction must not extend to the creation of a new contract for the parties. (*Preston* v. *Ætna Ins. Co.*, 193 N. Y. 142; *Houlihan* v. *Preferred Accident Insurance Co.*, 196 N. Y. 337, 340.) '' (*Witherstine* v. *Employers' Liability Assur. Corp.*, 235 N. Y. 168, 173.)

If parties to a contract adopt a provision which contravenes no principle of public policy and contains no element of ambiguity, courts have no right to relieve one of them from disadvantageous terms by a process of interpretation. If a policy of insurance is of doubtful tenor courts should employ that interpretation which is the more exacting against the insurer who has prepared the contract, but if the contract is not of uncertain meaning, courts may not make a new one under the guise of construction. (*Rosenthal* v. *American Bonding Co.*, 207 N. Y. 162, 168, 169.)

When policies of insurance are capable with equal reason of one or more interpretations they are to be construed against the insurer and in favor of the insured, but no liberality of construction in favor of the insured permits the inclusion of a risk which has been expressly excluded by the terms of the contract. (*Marcus* v. *United States Casualty Co.*, 249 N. Y. 21, 24, 25.)

An insurance policy is no different from other contracts and comes within the same rules of construction. It is the purpose and attempt of the courts to give to the language used by the parties its usual and ordinary meaning in the light of all the circumstances and conditions, having in mind, as did the parties, the nature of the transaction. (*Kean* v. *National Surety Co.*, 241 N. Y. 252, 258, 259; *Royster Guano Co.* v. *G. & R. Fire Ins. Co.*, 252 id. 75, 84.)

Policies of liability or indemnity insurance commonly except from coverage certain classes of liability such as responsibility for injuries occasioned by failure to comply with statute, or unlawful employment, resulting in loss. (*Buffalo Steel Co.* v. *Ætna Life Insurance Co.*, 156 App. Div. 453; affd., 215 N. Y. 638; *Mason-Henry Press* v. *Ætna L. Ins. Co.*, 211 id. 489; *Holland Laundry* v. *Travelers Insurance Co.*, 221 id. 698; *Marcus* v. *United States Casualty Co.*, *supra*.)

If is unlawful for any person to sell at retail or furnish any of the poisons enumerated without affixing or causing to be affixed to the bottle or package a label containing the name of the article, the word " poison " distinctly shown, the name and place of the business of the seller, all printed in red ink, together with the name of such poison printed or written thereupon in plain legible characters. It is also required that every person who shall dispose of or sell at retail or furnish any of the poisons enumerated, shall first satisfy himself that the purchaser is aware of its poisonous character, and that the

poison is to be used for a legitimate purpose. (Penal Law, § 1743; Education Law, § 1360.)

Applying to the facts disclosed by the record, the well established rules as to the construction of insurance contracts and the provisions of the Penal Law and Education Law applicable in this case, we may first inquire, what did the defendant insure plaintiff against, and for what did it agree to indemnify plaintiff? It is recited in the policy contract that the defendant agreed to indemnify the plaintiff for " * * * bodily injuries and/or death accidentally suffered * * * in consequence of any error or mistake, * * * in preparing, compounding, dispensing, selling or delivering, * * * any of the drugs, * * * customarily kept for sale in drug stores, * * *." Standing alone, without any other provision, exception, or reservation, such language clearly would cover any error or mistake without limitation or exception. The contract of insurance, however, in the same paragraph, in the same type, provides " * * * save and except claims arising by reason of:

" (1) Injuries and/or death which shall be shown to have been caused by any person employed in violation of Law, or caused by a failure to comply with any statute or local ordinance or in consequence of the performance of any unlawful act by the Assured or any employee of the Assured."

The policy did not cover wholesale transactions. While the wholesale price was charged to Lynn for the oil of tansy, the sale was actually made as a retail sale and so treated by the employees of the plaintiff, and unquestionably must be held to have been a retail sale.

The language of the contract is plain. It is so clear and explicit as not to be capable of more than one interpretation, and that is that " injuries and/or death * * * caused by a failure to comply with any statute * * * or in consequence of the performance of any unlawful act by * * * any employee of the Assured " are not covered by the contract.

When Lynn expressed a desire to purchase oil of tansy, a poison enumerated in schedule B of section 1743 of the Penal Law, and to which the provisions of such section and section 1360 of the Education Law, were applicable, a sale in compliance with Lynn's request, to be " lawful " necessitated the performance of certain acts, and the statutes made it unlawful to make the sale unless those acts were performed. It was incumbent upon the employee of the plaintiff; (1) to inquire for what purpose the desired poison was to be used, and to satisfy himself it was for " a legitimate purpose; " (2) to satisfy himself " that the purchaser is aware

of its poisonous character;" and (3) to attach a label to the container, printed in red ink, containing the name of the article, the word "poison," with the name and place of business of the seller. It was by the provisions of the Penal Law and the Education Law "unlawful" for any person to sell at retail any of the poisons mentioned in the schedules, unless such conditions and provisions were complied with. If the customer (in this case Lynn) had asked for an innocuous drug, such for instance, as oil of peppermint, and had been given oil of tansy by error and mistake, the policy would have covered such a transaction, but in this case the sale was a sale of the identical drug that was called for, made in a manner not in compliance with statutory provisions regulating such sale. A poison was called for. It is specified in the schedules of the Penal Law as a poison. The sale was made in direct violation of the statutory provisions governing such sale, and was clearly a sale and an act which was specifically excepted from coverage by the provisions of the insurance contract. Injury was "caused" by the "failure" to "comply" with a specific provision of "statute" and the act of the employee in so selling, delivering and dispensing, clearly caused the result in consequence of the performance of an "unlawful act."

The testimony is contradictory as to whether delivery was made to Lynn by Stern or Corkery. The evidence fairly establishes delivery was made by Stern. Lynn has so testified and his testimony was to the same effect upon the trial of the other action. Corkery has testified upon the trial of this action directly contrary to his previous testimony. Stern testifies he did not deliver the oil of tansy to Lynn. He was not sworn on the trial of the other action, but serious questions arise as to the weight to which his statement is entitled inasmuch as he, when charged with making the sale to Lynn, plead guilty. Upon the disputed question of delivery, we believe the weight of the credible testimony fully warrants a finding that Stern made the delivery to Lynn.

We can find no justification for holding that Corkery was unlawfully employed by plaintiff.

There was no violation of statute in failing to enter the sale on a register. The provisions requiring a record of sales being kept giving date of sale, name and address of purchaser, name and quantity of poison, purpose for which required, and name of dispenser, relate only to the drugs enumerated in schedule A. (Penal Law, § 1743; Education Law, § 1360.)

Plaintiff relies upon the principle that a violation of a statute or an ordinance does not necessarily prevent recovery, unless it can be related directly to the accident or the act of negligence

bringing it about. (*Messersmith* v. *American Fidelity Co.*, 232 N. Y. 161; *Brown* v. *Shyne*, 242 id. 176; *Corbett* v. *Scott*, 243 id. 66; *Clark* v. *Doolittle*, 205 App. Div. 697.) The difficulty with the argument is that in this case the violation of the statute related directly to the accident, to the occurrence. It related directly to an act of negligence which was caused by a violation of statutory duty by the making of an unlawful sale in an unlawful manner, and which resulted in the event upon which the cause of action against the plaintiff on the part of the estate of Anna V. Lynn was predicated.

In determining whether the acts were within the coverage of the contract, or were excepted therefrom, it is true the occurrence must be considered from its beginning to its end. As has been aptly said: " The character of the liability is not to be determined by analyzing the constituent acts which, in combination, make up the transaction, and viewing them distributively. It is determined by the quality and purpose of the transaction as a whole." (*Messersmith* v. *American Fidelity Co.*, supra, at p. 166.) So here taking the whole transaction, the nature of the sale, the unlawful manner of sale, the neglect to observe the plain requirements of the statute, the delivery of the poisonous drug without precaution, the fatal result to Anna V. Lynn, viewed " as a whole," lead to the irresistible conclusion such acts and transaction were within the clear and explicit exception contained in the indemnity contract.

The words " any error or mistake " were limited by the exception. They did not apply if the act was by one " unlawfully employed." They did not apply if the act was in " violation of statute " or " unlawful."

The technical and refined construction of the excepting clause urged by plaintiff cannot be adopted without doing violence to the plain meaning of the language used in the contract.

It is to be noted that in several of the authorities, particularly the *Messersmith* case, relied upon by plaintiff, there was no exception in the policy. In the *Messersmith* case the plaintiff brought an action upon a policy which indemnified him against liability for injuries accidentally suffered by anyone through the maintenance and use of his automobile. The defense was that in violation of the Highway Law the automobile was operated by an infant under lawful age, not accompanied by the owner or a licensed chauffeur. There was, however, no provision in the policy excluding from coverage such a claim. Without doubt plaintiff would be entitled to recover here had there been no exception included in the policy.

We cannot find that the indemnity contract was ambiguous. Holding to the rule that the provisions of an insurance contract

are to be construed where there may be two interpretations, most strongly against the insurer, we cannot find that there is any room for construction where the language of the contract is so clear and explicit as the language used in the contract here in question. We may apply the language of our court of last resort by saying that what we have here is " A plain contract, clear and explicit in its terms, is to be construed by the court. Equitable considerations will not allow an extension of the coverage beyond its fair intent and meaning in order to do raw equity and to obviate objections which might have been foreseen and guarded against, even though the contract to be construed is a policy of insurance." (Citing cases.) (*Weinberg & Holman, Inc.*, v. *P. W. Ins. Co.*, 254 N. Y. 387, 390, 391.)

For the reasons outlined, we are of the opinion the plaintiff has failed to establish a cause of action or right to recover upon the insurance contract against the defendant. It is our view that the acts of Stern and Corkery, the employees of the plaintiff, were clearly and unquestionably unlawful and in violation of statute; that their acts being unlawful and in violation of statute, were specifically and explicitly excepted, and that their error and mistake was not such an error and mistake as were included in the coverage of the indemnity contract.

Judgment is directed for the defendant dismissing the complaint of the plaintiff upon the merits with costs.

Findings and judgment accordingly.