[Civ. No. 17198.   First Dist., Div. One.   July 8, 1957.]

OAKLAND STADIUM (a Corporation), Plaintiff and Appellant, v. UNDERWRITERS AT LLOYD'S, LONDON, Defendant and Appellant; FIREMAN'S FUND INDEMNITY COMPANY (a Corporation) et al., Cross-Defendants and Appellants.

Bronson, Bronson & McKinnon for Plaintiff and Appellant and for Cross-Defendants and Appellants.

Derby, Cook, Quinby & Tweedt for Defendant and Appellant.

BRAY, J.—Plaintiff recovered judgment against defendant Underwriters at Lloyd's. Thereafter the trial court, Honorable Frank T. Deasy presiding, entered a minute order granting a new trial. Thereafter Judge Deasy died. Defendant then moved the trial court, Honorable Milton D. Sapiro presiding, to amend said minute order to specify that the motion for new trial had been granted by Judge Deasy on the ground of insufficiency of evidence and on other grounds. Defendant appeals from the judgment against it and from the order denying the motion to amend the minute order.* Plaintiff appeals from the order granting new trial.

*The judgment was also against defendant London Guarantee and Accident Company, Limited. However, plaintiff's appeal from the order granting new trial in favor of London and London's appeal from the judgment and the order denying motion to amend and the action as against London have been dismissed by stipulation. "Defendant" as used herein means defendant Underwriters at Lloyd's.

## QUESTION PRESENTED

Did the insurance policy cover the liability of plaintiff to one Leslie Pine under a judgment obtained by Pine against plaintiff for personal injuries received during an automobile race on premises owned by plaintiff?

## RECORD

Judge Deasy found that plaintiff was covered by a policy issued by defendant, as concurrent insurance with policies issued by London and Fireman's Fund and that defendant's proportion was 2/7ths. The Pine judgment against plaintiff was for $108,524.24, so plaintiff's judgment against defendant was for $31,006.92. Defendant's motion for new trial was on all statutory grounds. No affidavits were filed. Judge Deasy's minute order granting the new trial did not specify any grounds. Judge Sapiro refused to amend the minute order, stating that his order of denial was made solely on the ground of lack of authority to act.

Plaintiff was the owner of the Oakland Stadium which contained a race track. Golden State was and is a corporation owning theatres and other corporations. By early 1947 Golden State had acquired all of the stock of plaintiff. Thereafter Golden State operated the Oakland Stadium in the same manner and through the same personnel that it operated its theatres and its other corporations.

Northern California Roadster Racing Association contracted with plaintiff to hold an automobile race in the stadium on October 31, 1948. In the race Leslie Pine, who was an employee of the racing association, was injured. He sued plaintiff and Golden State for $150,000, alleging negligent maintenance of the track. Plaintiff claimed to be insured against this liability by three companies, London with a policy limit of $200,000, defendant with a limit of $100,000, and Fireman's with a limit of $50,000. Both London and defendant declined any responsibility. Fireman's accepted responsibility and defended the action. Pine recovered judgment against plaintiff for $108,524.24 (including interest to date of payment).

Between the time of the accident and the time the judgment was paid, plaintiff as a corporation had dissolved and all its assets were distributed to its sole stockholder, Golden State, which assumed its obligations. Golden State agreed with Fireman's that Fireman's would and did advance to Golden State an amount equal to Fireman's total limit under

its policy, as if there had been no other insurance covering the loss. That amount was $52,230.97. Golden State then paid that amount plus $56,293.87 of its own money, in full payment of the judgment. It was agreed that plaintiff would sue London and defendant to enforce their obligations on the theory that the total loss should be borne by the three insurers pro rata according to their policy limits, that from the recovery above $52,230.97 plaintiff would pay back Fireman's all sums advanced by it over its pro rata loss, about $15,000.

## TERMS OF POLICY

It is conceded that because the minute order granting new trial set forth no grounds, the sole issue in the case is whether as a matter of law the evidence compels a judgment in favor of defendant. This, in turn, depends upon whether the policy issued by defendant did not cover plaintiff.

In the contract between plaintiff and the racing association, plaintiff agreed to be responsible for the good condition and maintenance of the race track. The contract itself required that plaintiff carry public liability insurance, naming both plaintiff and the association as assureds. Plaintiff obtained such policy from Fireman's. Additionally it was agreed as a condition of plaintiff's allowing the race to be held that plaintiff was to become an additional assured under a policy theretofore issued to the racing association by defendant. Pursuant to this agreement the association arranged for the issuance of an endorsement on the policy, which it received and delivered to plaintiff. This endorsement read: "It is hereby understood and agreed that the following is added as an Additional Assured hereunder: Oakland Stadium, a Corporation. Effective: October 27, 1948. All other terms and conditions remaining unchanged." The policy issued to the association provided that defendant agreed "to pay on behalf of the Assured all sums which the Assured may become obliged to pay by reason of the liability imposed upon the Assured by law for damages because of (a) Bodily injury, sickness or disease, sustained by any person or persons . . ." However, the policy contained this provision: "4. This insurance does not apply to: (a) liability of any owner or operator of any Racetrack, Stadium or other exhibition premises, whether assumed by the Assured or not, nor to the liability of any other person except a member of the Assured and only as respects the activities of the Assured, or (b) the operation or use of any automobile on any public street or

highway, or (c) the operation or maintenance of any race-track, stadium or exhibition premises by the Assured as owner, or lessee of such premises, or (d) liability assumed by the Assured under any contract not defined herein, or (e) bodily injury to or sickness, disease or death of any member or employee of the Assured or any obligation for which the Assured or any insurer may be liable under any Workmen's Compensation Act, or (f) liability for damage to property of members of the Assured or property owned by or in the care and custody of the Assured.''

■ ''An insurance company has the right to limit the coverage of a policy issued by it and when it has done so, the plain language of the policy must be respected.'' (*Continental Cas. Co.* v. *Phoenix Const. Co.*, 46 Cal.2d 423, 432 [296 P.2d 801].)

It is plaintiff's contention that these exclusions did not apply to it. Such contention is without merit. The endorsement making plaintiff an additional assured expressly states ''All other terms and conditions [of the policy] remaining unchanged.'' The policy is not a general liability one insuring against all liability imposed upon the assured for bodily injury of another, under all circumstances. It expressly excludes the liability of the assured as an owner, operator, or maintainer of a race track.

This is not a case in which it is claimed that defendant in anywise represented to plaintiff that the policy included anything excluded therein. The endorsement was obtained and delivered to plaintiff by the association. Plaintiff did not ask to see the policy nor did it know its terms. There was no discussion, no contract, and no agreement between plaintiff and defendant other than the issuance of the endorsement. Plaintiff paid no premium for the endorsement. Nor did the association. ''In the purchase and sale of insurance, as in the barter and sale of goods and wares in the commercial marts, the purchaser can expect to get no more than he pays for.'' (*Foster* v. *North American Acc. Ins. Co.*, (Tex.Civ.App.) 86 S.W.2d 476, 477.)

■ Plaintiff contends that because of its name ''Oakland Stadium,'' the fact of ownership of a race track, and the fact that as between it and the association it would not have permitted the race to be held had it known it was not insured against liability from the ownership of the track, the policy restrictions do not apply to it. In other words it contends that these clauses are eliminated. The mere name of the

plaintiff and the fact of ownership certainly could not result in a change of the terms of the policy, nor could the agreement between plaintiff and the association, uncommunicated to defendant. It would be absurd to hold that the addition of an assured to a policy alone, "All other terms and conditions remaining unchanged," actually changed those terms and conditions so specified to be unchanged. To hold otherwise would be to put plaintiff as an assured in better position under the policy than the original assured who was paying the premium. It would be converting a policy which is a limited obligation one as to the original assured into a general liability one as to the additional assured merely by adding the additional name and in spite of the express provision that the conditions of the policy remain unchanged. There is nothing ambiguous in the terms of the policy. They are clear and distinct. Plaintiff cites no case that actually supports its position. Plaintiff relies principally upon *O'Neill* v. *Caledonian Ins. Co.*, 166 Cal. 310 [135 P. 1121], and on *Yoch* v. *Home Mutual Ins. Co.*, 111 Cal. 503 [44 P. 189, 34 L.R.A. 857]. In both cases, however, the facts were entirely different from those in our case. In the O'Neill case policies of fire insurance were issued, one covering a building and the other the stock of goods and furniture in the building. The provisions of the policies were otherwise identical. Each policy contained a provision that the insurer would not be liable for loss while there be kept or allowed on the premises any quantity of gasoline exceeding one quart. Attached was a slip stating that the premises were occupied for certain purposes including an automobile repair shop and warranting that no gasoline would be admitted to the building other than that contained in the "reservoirs" of machines "stabled" on the premises. An automobile with a leaking gasoline "reservoir" was brought to the shop to have the leak repaired. It contained approximately 20 gallons of gasoline which gasoline was emptied into four 5-gallon cans placed on the floor of the shop. After the leak was repaired the shopowner was in the act of pouring gasoline from one of the cans into the repaired reservoir to see if the leak were closed when the gasoline ignited and started the fire which did considerable damage to the building and contents. The court properly held that the rider stating that the premises were to be used for an automobile repair shop and indicating that gasoline would be contained in the reservoirs of stabled cars, controlled over the one-quart limitation. From the

rider it must be presumed that the insurer intended to insure against all ordinary risks attending an automobile repair shop carried on in the customary manner, "that when the reservoir of a machine leaked and was brought into the shop for repair while the reservoir was full, it would be necessary first to empty it of gasoline, and that a good workman, after making repairs, would put in some gasoline to test it. It would also be necessary, in the usual course of business, to replace the gasoline in the reservoir after the leak was repaired. The company must be presumed to have intended that these usual and necessary operations of the business should be allowed. Therefore, such use of gasoline did not violate the policies." (P. 315.) Thus, there the very character of the business expressed in the policy showed that the limitation could not apply. The same is true of the Yoch case. There one clause of the policy prohibited the keeping on the premises of gasoline. Another clause insured a building "occupied as a country store" and the stock of merchandise "such as is usually kept in country stores." The premises burned and the insurer defended on the ground that in keeping gasoline there, the assured violated the terms of the policy. The evidence proved that gasoline was an article customarily kept in country stores. The court held that it must be presumed that when the defendant agreed to insure merchandise "such as is usually kept in country stores" it must be presumed to know that gasoline was one of these articles, and that therefore this provision controlled over the provision prohibiting gasoline to be kept upon the premises.

In our case there is no expression in the policy of the character of plaintiff's business. Nor is the fact of plaintiff's name such a representation. It could just as well be charged that the name of the original assured, Northern California Roadster Racing Association, indicating as it does that it is in the racing business, overcomes the exclusion of the owner or operator of a race track. In the O'Neill and Yoch cases the court was interpreting conflicting clauses of a policy. In our case there are no conflicting clauses.

Some evidence of plaintiff's own interpretation of the policy is the fact that although the policy required immediate notice to be given the company of an accident or suit, plaintiff never did give defendant such notice. The accident occurred October 31, 1948. The Pine suit was filed March 30, 1949, and it was not until May 11 that a demand was made upon de-

fendant to defend the action and this demand was not made by plaintiff but by Fireman's attorneys.

Apparently plaintiff never looked at the policy and there is no evidence that either the association or plaintiff discussed it with defendant. As said in *Hewit Pharmacies* v. *Aetna Life Ins. Co.*, 148 Misc. 663 [266 N.Y.S. 290, 293] : "The rights of the parties must be determined by the provisions of the contract which the defendant issued and the plaintiff accepted. It is not a question of what the plaintiff assumed, or what the plaintiff believed was covered in connection with the conduct of its business." Likewise, in *Mawhinney* v. *Southern Ins. Co.*, 98 Cal. 184, 187 [32 P. 945, 20 L.R.A. 87], the court said: "An insurer is not liable, except upon proof that the loss has occurred within the terms of the policy, and when making the policy he is at liberty to select the character of the risk he will assume. If the terms of this risk are distinct and without ambiguity, the assured cannot complain if the risk assumed does not cover the loss."

There is nothing in the policy to show that plaintiff was the owner and operator of a race track. ■ Where, as here, an assured merely requests an insurer to add an additional assured to a policy already issued and the insurer complies with that request, it is not necessary that such act of the insurer actually confer a benefit upon the additional assured. If the latter is unable to meet the terms of the policy, such fact does not extend the terms of the policy. Thus, in the absence of anything other than the request to add the additional name, the effect of adding the name confers upon the additional assured only such benefit as under the terms· of the policy he is entitled to receive. Here, although the policy did not cover plaintiff's liability as owner and operator of a race track and stadium, it did confer other benefits upon plaintiff. Plaintiff received the same coverage as the association as to liability which might ensue from negligence of the joint adventure of plaintiff and the association other than negligence in the maintenance and operation of the track itself. Secondly, by issuing its policy defendant waived its right to subrogation against plaintiff which it might have had by reason of payment of any liability of the association for which the latter would have been entitled to indemnity from plaintiff. (*Builders & Mfrs. Mut. Cas. Co.* v. *Preferred Automobile Ins. Co.*, (C.C.A.Ohio) 118 F.2d 118, 121.) True, this, of course, was limited to liability other than from negligence in the maintenance or operation of the track.

In view of our decision that the exclusions in the policy applied to plaintiff, it is not necessary to consider any of the other questions raised on this appeal.

The order granting the new trial is affirmed, and inasmuch as we have determined as a matter of law that plaintiff was not covered by the insurance policy in question, the trial court is instructed to enter judgment in favor of defendant. For the same reason, the order denying the motion to amend the minute order is affirmed. Defendant's appeal from the judgment is dismissed. Defendant will recover costs on appeal.

Peters, P. J., and Wood (Fred B.), J., concurred.

A petition for a rehearing was denied August 7, 1957, and the petition of appellants Oakland Stadium, Fireman's Fund Indemnity Company, and Golden State Theatre & Realty Corporation for a hearing by the Supreme Court was denied September 4, 1957.