**CITY OF BEVERLY HILLS, Plaintiff,**

**v.**

**CHICAGO INSURANCE COMPANY,
and Interstate Insurance Group,
Defendants.**

**No. CV 85–4268–ER(Mcx).**

United States District Court,
C.D. California.

Aug. 10, 1987.

Steven L. Paine of Cotkin, Collins, Kolts & Franscell, Los Angeles, Cal., for plaintiff City of Beverly Hills.

Arthur T. Schaertel of Parker, Stanbury, McGee, Babcock & Combs, Los Angeles, Cal., for defendants Chicago Ins. Co. and Interstate Ins. Group.

## MEMORANDUM OPINION GRANTING JUDGMENT FOR DEFENDANTS

RAFEEDIE, District Judge.

This matter came before the Court for bench trial on July 10, 1986. The parties presented oral and documentary evidence at trial and presented their arguments to the Court. The Court took this matter under submission, and has now considered the evidence and arguments presented at trial as well as the papers and pleadings on file and the applicable law and hereby enters judgment in favor of defendants and against plaintiff.

This Court has jurisdiction over this matter pursuant to 28 U.S.C. section 1332, and venue is appropriate in the Central District of California pursuant to 28 U.S.C. section 1391.

### Factual Background

On November 15, 1983, Chicago issued a policy of comprehensive general liability insurance with a broad form comprehensive general liability endorsement to Tom John Automotive, Inc. ("Tom John") for the period from December 12, 1983 to December 12, 1984. Tom John operates a vehicle towing service and garage and handles towing and storage of vehicles at the direction of the City of Beverly Hills Police Department ("Police Department"). Tom John and the City have a contractual relationship whereby Tom John has the exclusive right to tow vehicles at the direction of the Police Department.

On November 15, 1983 Universal Insurance Services ("Universal")[1] issued a certificate of insurance stating that the City was an additional insured under Tom John's policy with Chicago. The Police Department is also an additional insured under the Tom John policy.

On June 22, 1984 the Police Department impounded a motor vehicle owned by Edward Dean Seidman pursuant to California Vehicle Code section 22651(o) because the vehicle's Illinois registration had been expired for more than one year. The Police Department directed Tom John to tow and store the vehicle. On that date Seidman went to the City's police station and demanded the return of his car, but was told that the vehicle would be held until he produced an up to date Illinois motor vehicle registration. Plaintiff requested a hearing before a neutral arbitrer to determine the appropriateness of the tow, but the City refused him such a hearing, and informed him that his car would not be released until he produced a current registration. The City held the car at Tom John's garage until July 18, 1984 when Seidman furnished the City with proof of current registration, and the City authorized Tom John to release the vehicle to Seidman. Pursuant to a purported garageman's lien, Tom John required Seidman to pay $222.00 in towing and storage fees before releasing the vehicle.

On August 24, 1984, Seidman filed and thereafter served a class action against the City and Tom John entitled *Edwin Dean Seidman, On Behalf of Himself and a Class of All Persons Similarly Situated v. City of Beverly Hills, Tom John Towing, et al.,* United States District Court, Central District of California, CV 84–6322 IH ("the underlying action"). Plaintiff alleged, on behalf of himself and a class of approximately 10,000 vehicle owners, that the City and Tom John had towed and stored automobiles over a three year period without holding the type of post-tow hearings required by California Vehicle Code section 22852 and the due process requirements of the United States Constitution. Seidman contended that the City had deprived the class and he of their civil rights and was liable under 42 U.S.C. section 1983 for (i) failing to give written notice of the right to a post-tow hearing, (ii) failing to provide such a hearing, and (iii) failing to have procedures to conduct such hearings. Seidman also alleged that Tom John was liable under section 1983 for, among other things,

[1]. Universal was a general agent for Chicago pursuant to a written agency agreement dated December 1, 1982. Universal issued the certificates of insurance as Chicago's general agent. Universal delivered the certificates naming the City as additional insured at the time the certificates were issued.

requiring payment for the release of vehicles when the City failed to provide a post-tow hearing. Seidman further alleged that the City was liable for Tom John's alleged improper assertion of garageman liens.

Seidman sought declaratory and injunctive relief, nominal damages, compensatory damages for infliction of emotional distress, restitution of all monies paid for towing and storage of vehicles, and damages for conversion and trespass.

During the course of the underlying action, the City conceded that it had improperly failed to provide post-tow hearings for several years in violation of the law and the requirements of due process. The City subsequently enacted an ordinance which brought its procedures within the requirements of the law.

On March 25, 1985, Judge Hill denied Seidman's motion for class certification and granted the City's motion for partial summary judgment. The only issues remaining after this hearing were Seidman's entitlement to attorneys' fees and the assessment of damages recoverable under the emotional distress claim and the claim for violation of due process.

On May 6, 1985, Judge Hill awarded Seidman fees in the sum of $10,000 and costs of suit to be paid solely by the City. During that hearing Judge Hill remarked that the City had without "good cause or excuse, failed for several years to abide by the requirements of the law in its conduct and procedures for the impoundment and towing of cars found on its streets." (Reporter's Transcript, p. 8)

In contrast to the City's "obdurate" conduct over the "past three years", *Id.*, pp. 8–9, Judge Hill found that Tom John had only carried out its contractual obligations pursuant to City direction:

"Let me switch to a consideration of defendant Tom John. As to the equitable relief which is the accomplishment of plaintiff's counsel thus far, this was solely and entirely within the ability of Beverly Hills to give. Tom John could not give any of this relief. In fact, Tom John, it seems to me, is only a nominal defendant. I'm surprised that Tom John has not already brought some sort of motion to be dismissed out of the case.... It cannot be gainsaid, it seems to me, that whatever Tom John did, it was doing under the direction of the City of Beverly Hills, and Tom John thus may have total indemnity rights as against the City for any liability that it incurred.

Analyzing the case, it would appear to me that Tom John owed no statutory or due process obligation to the plaintiff individual. Whatever the obligations Tom John may have had were derived from its performance of a duty delegated and imposed upon it by the City."

*Id.*, pp. 12–3.

Judge Hill thus imposed attorneys' fees solely against the City. On May 29, 1985, the City agreed to pay Seidman $2,706 to settle all outstanding issues on his individual claims. Seidman appealed the denial of class certification, but that appeal was dismissed by the Ninth Circuit Court of Appeal on April 3, 1986.

### Precipitation of This Action

Tom John tendered defense of the underlying action to Chicago, and Chicago consented to defend Tom John in that action. On June 17, 1985, Chicago reimbursed Tom John for its legal expense and costs incurred in the underlying action. The City also tendered defense of the underlying action to Chicago arguing that it was covered because it was an additional insured under Tom John's comprehensive general liability policy and that the policy covered the allegations made against it in the underlying action. In May 1985, after the underlying action was essentially concluded, Chicago orally advised the City that it would not indemnify the City for the settlement with Seidman, the fees awarded by the Court to Seidman, or the expenses incurred by the City in litigating the underlying action. Chicago maintained that the underlying action was caused by actions of the City and not Tom John and that therefore the City had no right to a defense or indemnity.

Faced with Chicago's denial of coverage, the City filed the instant action claiming breach of insurance contract and bad faith refusal to defend and indemnify the City.

### Analysis

Plaintiff's theory of the case essentially centers on its argument that Chicago wrongfully refused to defend it in the underlying action. The City maintains that it was an additional insured under Tom John's policy, and that the policy entitled it to a defense because the allegations in the underlying action came within the coverage of the policy issued to Tom John. The City further contends that the wrongful refusal to defend entitles it to recover all damages incurred in the underlying action regardless of whether those damages were covered or excluded from coverage citing *Cathay Mortuary (Wah Sang) Inc. v. United Pacific Ins. Co.*, 582 F.Supp. 650, 659–60 (N.D.Ca.1984).

■ The appropriate inquiry in this action concerns whether the allegations against the City in the underlying action involved a claim for which the City was covered as an additional insured under Tom John's policy. If no such claim was involved, then Chicago had no duty to defend the City. An insurer's duty to defend is broader than its duty to indemnify its insured. *E.g. Gray v. Zurich*, 65 Cal.2d 263, 276–77, 54 Cal.Rptr. 104, 419 P.2d 168 (1966); *Giddings v. Industrial Indemnity Co.*, 112 Cal.App.3d 213, 217, 169 Cal.Rptr. 278 (1980). The duty to defend is to be assessed from the outset of the litigation, and the insurer must defend its insured if there is a potential of liability under the policy. *CNA Casualty of California v. Seaboard Surety Co.*, 176 Cal.App.3d 598, 605–06, 222 Cal.Rptr. 276 (1986).[2]

■ The initial step in analyzing the duty to defend in any particular action is to focus upon the language and purpose of the applicable insurance policy. The duty to defend is obviously limited to the nature and kind of risks covered by the policy. *E.g. Gray v. Zurich*, 65 Cal.2d at 275, 54 Cal.Rptr. 104, 419 P.2d 168; *Dillon v. Hartford Accident & Indemnity Co.*, 38 Cal.App.3d 335, 339–40, 113 Cal.Rptr. 396 (1974).

The insurance policy issued to Tom John was a comprehensive general liability policy covering the towing and garage operations of Tom John. The coverage language provides that Chicago "will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of [A.] bodily injury or [B.] property damage to which this insurance applies, caused by an occurrence...."

"Occurrence" is defined as an "accident, including continuous or repeated exposure, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured." The term "accident" is defined as follows: "ACCIDENT includes continuous or repeated exposure to conditions which results in bodily injury, property damage, or environmental damage which the insured neither expected nor intended."

■ It is not readily apparent that the policy entitled the City to a defense in the underlying action. Nonetheless, an insurer must defend its insured where the policy reasonably leads the insured to expect a defense under the policy. *Gray v. Zurich*, 65 Cal.2d at 275, 54 Cal.Rptr. 104, 419 P.2d 168; *St. Paul Fire & Marine Ins. v. Weiner*, 606 F.2d 864, 868 (9th Cir.1979). In assessing the "reasonable expectations" of the parties, the City asks the Court to utilize the liberal principles of construction outlined in *Gray v. Zurich* and its progeny. *See e.g. Cal-Farm Ins. Co. v. TAC Exterminators, Inc.*, 172 Cal.App.3d 564, 218 Cal.Rptr. 407 (1985).

But that line of cases does not automatically govern the policy interpretation in this action. This is not a case involving the

---

**2.** Consequently, Judge Hill's comments discussed in the text of the opinion are not dispositive of the issue of whether Chicago had a duty to defend the City in the underlying action. Judge Hill's observations came at the end of the litigation and do not resolve the issue of whether Chicago had a duty to defend the City because that duty is to be determined at the outset of the action.

interpretation of an exclusionary clause, rather it is necessary to determine whether the allegations in the underlying action come within the coverage provisions of the Tom John policy. The issue in this case concerns the scope of the coverage itself, thereby this case is akin to cases such as *Giddings v. Industrial Indemnity Co., supra, St. Paul Fire & Marine Ins. v. Superior Court,* 161 Cal.App.3d 1199, 1202–03, 208 Cal.Rptr. 5 (1984), and *Royal Globe Ins. Co. v. Whitaker,* 181 Cal.App.3d 532, 226 Cal.Rptr. 435 (1986).

"[T]he significance of this distinction lies in the burden of proof. While the burden is on the insurer to prove a claim covered falls within an exclusion ... the burden is on the insured initially to prove that an event is a claim within the scope of the basic coverage." *Royal Globe,* 181 Cal. App.3d at 537, 226 Cal.Rptr. at 437 (citations omitted).

■ The City therefore has the burden of proving that there was an "occurrence" which established Chicago's duty to defend the City in the underlying action. Plaintiff has not clearly stated, either at oral argument or in its written trial briefs, exactly what acts constitute the "occurrence" which allegedly gave rise to coverage in the the underlying action. All of the claims in that lawsuit flowed from the towing of Seidman's vehicle, and more particularly, from the City's refusal to provide Seidman with a post-tow hearing. Plaintiff apparently contends that these are the insured events which obligated Chicago to defend it in the underlying action.

But these acts, in and of themselves, do not appear to be "occurrences" as that term is defined in the policy. The City clearly intended to deny Seidman a hearing. Plaintiff has not specifically explained why this purposeful denial constitutes an occurrence. At oral argument the City's counsel implied that the denial of a hearing was an occurrence because of an earlier negligent and concededly wrongful act of a city clerk who allowed procedures implemented to provide hearings to lapse. The City had established procedures comporting with due process, but claims that it inadvertant-ly allowed these procedures to lapse several years before the towing of Seidman's vehicle.

The Court doubts that the City's negligent failure to maintain its previously established procedures concerning post-tow hearings constitutes an "accident" or "occurrence" under the policy. Certainly this event was not unforeseen at the time the policy was issued—it had already occurred. The City had previously adopted a policy of not providing notice or post-tow hearings. It is not important whether this policy was arrived at due to the negligence of the city clerk, the fact remains that prior to the issuance of the insurance policy, and, in fact, prior to the contractual relationship between the City and Tom John, the City had committed itself to a course of action which led it to deny hearings when they were requested after the towing of vehicles.

In light of this practice, it is plainly unreasonable to argue that at the time of the issuance of the insurance the City could have contemplated that the denial of a hearing would be an "occurrence" under the policy. It is similarly untenable to argue that either party contemplated that the City would be covered for claims arising out of its denial of hearings to vehicle owners. For that would mean that every single tow made by Tom John for the City potentially created a claim against the City which would be covered by the policy. The City cannot reasonably claim that it believed itself to be covered for such claims. It is difficult to believe that Chicago would knowingly undertake such risks. Simply put, denial of notice and hearings cannot be viewed as an "occurrence" or "accident" within the contemplation of the parties at the time they entered into the insurance contract. The City was not covered in the underlying action because there was no "occurrence."

Even if the negligent act of a city clerk somehow transformed the purposeful denial of a hearing into an "occurrence" as that term is defined in the Tom John policy, it is apparent that this act occurred *prior* to issuance of the policy by Tom John and

prior to the City's becoming an additional insured under that policy. The negligent act occurred before the insurance policy was issued and therefore did not happen within the policy period; consequently it would appear that there should be no coverage for an "occurrence" where the negligent act preexisted the issuance of the policy. *See generally* 6B Appleman, *Insurance Law and Practice* (Buckley ed.) sections 4262–65.

The same conclusion is reached by assessing the duty to defend in light of the intent of the parties to the insurance contract and the reasonable expectations of the insured. The City has failed to show that as an additional insured under Tom John's policy with Chicago it had a reasonable expectation of coverage in the underlying action. It is not reasonable to expect that the insurance would apply to "negligent" acts which predated the issuance of the policy by several years. An accident or occurrence is "something unforeseen, unexpected, and unpremeditated, something which does not occur in the usual course of things." 1A Appleman, *Insurance Law and Practice* (Buckley ed.) section 360. In this case the alleged accident or occurrence happened years before the policy was issued. It is not reasonable to expect that the policy would cover preexisting accidents. The City also could not have reasonably expected it would be covered for civil rights violations because there was no reason to expect any such violations at the time the policy was obtained. Years before, the City had established procedures satisfying the due process requirements and had no reason to expect that such procedures would not be carried out. In fact, the evidence at trial revealed that none of the parties to the insurance contract expected that the policy would cover the City for civil rights violations, nor would any such expectation have been reasonable given the circumstances.

Moreover, it is simply not reasonable to expect that this policy, which was issued to a towing and recovery operation, would provide coverage for civil rights violations. A review of the policy makes clear that its purpose is to insure against possible claims arising out of the type of accidents incidental to the towing and recovery business of Tom John. The policy essentially provides coverage for potential accidents that might occur during the towing and storage of vehicles. The City was listed as an additional insured at no extra premium and is entitled to the same coverage as the named insured—it is not entitled to any greater coverage than that of Tom John. *See Oakland Stadium v. Underwriters at Lloyds'*, 152 Cal.App.2d 292, 297–99, 313 P.2d 602 (1957). Basically, the City, under whose direction the towing and storing took place, is protected in cases where it might be brought into an action because Tom John, acting under the direction and on behalf of the City, was potentially responsible for bodily injury or property damage arising out of the towing of cars.

It is not reasonable to expect that Tom John's policy covered either it or the City for possible civil rights violations. Tom John had no responsibility or authority to provide hearings to owners of towed vehicles. Instead, Tom John merely performed services as directed by the City. In fact, Tom John could not have been held liable for the civil rights violations alleged by Seidman in the underlying action, and it would be unreasonable to expect that its insurance covered such violations. Consequently, it is far more unreasonable to expect that the City—the party solely responsible for the violations of Seidman's constitutional and statutory rights—is entitled to obtain coverage under Tom John's policy because of its status as an additional insured.

Support for the Court's conclusion that it was not reasonable to expect that Tom John's policy covered it or the City for civil rights violations is found in the case of *Mays v. Scranton City Police Department*, 503 F.Supp. 1255 (M.D.Pa.1980). *Mays* held that a private towing company was not liable to a vehicle owner for civil rights violations. Although *Mays* held that the towing by a private tower could be viewed as "state action" under 42 U.S.C. section 1983, the court noted that the mere fact that the tower acted under color of

state law did not make him liable for civil rights violations. As the court explained:

> The constitutional violation found here is the failure to afford a hearing prior to the imposition of the lien for towing and storage costs. The towing itself is not the constitutional deprivation; nor can the detention of the vehicle alone be considered a denial of constitutional rights....
>
> Although the tower retains the vehicle and thus plays a central role in the governmental appropriation of property, he is not in a position to provide the procedural avenue by which the vehicle may be released. It is the responsibility of the law enforcement agency that directed the tow to provide the procedural safeguards mandated by the Fourteenth Amendment; the tower is not the party in the tripartite relationship of tower, city, and vehicle owner to provide the hearing. The tower merely holds the vehicle and seeks compensation for his services. His concern is not with the validity of the tow. If the removal is found illegal, the tower may presumably look to the city for remuneration; if the tow is valid, he may retain the vehicle until its owner makes payment. Thus, the real controversy is between the city law enforcement agency and the vehicle owner. The tower is the interested bystander to the dispute ...
>
> If the necessary hearing has not been provided, it is the city's constitutional omission, not the tower's.

503 F.Supp. at 1264.

This lawsuit was precipitated by the City's failure to provide Seidman with a hearing after towing his vehicle. Seidman demanded such a hearing, but the City refused. The City's position that this refusal was based upon an "occurrence" that happened at some undefined period of time when the City allowed previously established procedures to lapse does not constitute an occurrence within the policy period. Similarly, it is not a reasonable expectation of any of the parties to the insurance contract that the City would be covered for lawsuits directed against it because of these violations of the civil rights of owners of towed vehicles under the general liability policy issued to Tom John. That policy did not provide coverage for violations of civil rights which Tom John could not be liable for. The City's status as an additional insured is to protect it from lawsuits brought on by conduct of Tom John while towing and storing vehicles under the direction of the City. Tom John was brought into the underlying action due to the City's failure to provide a constitutionally required hearing and the City's failure to maintain procedures which it had established to fulfill those requirements. To argue that the City was entitled to a defense in the underlying action based upon its status as an additional insured under Tom John's policy is simply unreasonable.

Based on the foregoing, it is apparent to the Court that the plaintiff failed to sustain its burden of proving that it was entitled to a defense in the underlying action based upon its status as an additional insured on the Tom John policy. Judgment in favor of defendants and against plaintiff is hereby entered accordingly, and defendants are awarded their costs of suit.

IT IS SO ORDERED.