[Civ. No. 24381. Second Dist., Div. Two. Sept. 29, 1960.]

NORMAN LIND PEDERSEN, Respondent, v. MORRIS J. FIKSDAL, Appellant.

W. Frank Butters for Appellant.

Robert F. Tyler for Respondent.

NOURSE, J. pro tem.*—This is an action by plaintiff, a licensed engineer and architect, to recover certain monies

---

*Assigned by Chairman of Judicial Council.

which he alleges to be due him from defendant under the terms of a written contract. Defendant appeals from the judgment in favor of the plaintiff, rendered by the court sitting without a jury.

The contract sued upon consisted of a standard printed form issued by the American Institute of Architects, with deletions and typewritten additions. The pertinent parts of the written contract are set forth in the footnote.[1] The parts italicized are the typewritten additions to the standard form. Unitalicized article 5, as set forth in the footnote, was a part of the printed form, but was deleted.

Prior to the execution of the contract in question, the plaintiff had prepared certain preliminary plans. After the execu-

---

[1] "WITNESSETH, that whereas, the Owner intends to erect AN APARTMENT HOUSE CONSISTING OF FIVE STORIES . . . hereinafter called the Work,

"Now, THEREFORE, the Owner and the Architect, for the considerations hereinafter named, agree as follows:

"The Architect agrees to perform, for the abovenamed Work, professional services as hereinafter set forth.

"The Owner agrees to pay the Architect for such services a fee of SEVEN (7%) per cent of the cost of the Work, with other payments and reimbursements as hereinafter provided, the said percentage being hereinafter called the Basic Rate.

"The parties hereto further agree to the following conditions:

"1. *The Architect's Services.*—The Architect's professional services consist of the necessary conferences, the preparation of preliminary studies, working drawings, specifications, large scale and full size detail drawings, for architectural, structural, plumbing, heating, electrical, and other mechanical work; assistance in the drafting of forms of proposals and contracts; the issuance of certificates of payment; the keeping of accounts, the general administration of the business and supervision of the Work.

"2. *Reimbursements.*—The Owner is to reimburse the Architect the costs of transportation and living incurred by him and his assistants while traveling *in discharge of duties connected with the Work, the cost* of all reproductions of drawings, the cost of the services of engineers for normal plumbing, heating, electrical, and other mechanical work and of special consultants, and other disbursements on his account approved by the Owner. . . .

"5. *Payments.*—Payments to the Architect on account of his fee shall be made as follows, subject to the provisions of Article 4:

"Upon completion of the preliminary studies, a sum equal to 25% of the basic rate computed upon a reasonable estimated cost.

"During the period of preparation of specifications and general working drawings monthly payments aggregating at the completion thereof a sum sufficient to increase payments to 75% of the rate or rates of commission arising from this agreement, computed upon a reasonable cost estimated on such completed specifications and drawings, or if bids have been received, then computed upon the lowest bona fide bid or bids.

"From time to time during the execution of work and in proportion to the amount of service rendered by the Architect, payments shall be made until the aggregate of all payments made on account of the fee under this Article, but not including any covered by the provisions of

tion of the contract in question, the plaintiff prepared further drawings, specifications, large scale and full-size detailed drawings for a portion of the work covered by the contract. He contracted with an engineering firm to draft and prepare the electrical and mechanical plans and specifications. He also caused to have reproductions made of his own plans and drawings and of those prepared by the engineering firm which he had employed. He incurred and paid charges in the sum of $4,550 for the services of the engineering firm and $421.61 on account of the reproduction of the plans and drawings. He did not, prior to incurring the expenses above mentioned, first secure the approval of the defendant.

After the plans were completed and some bids had been taken, defendant abandoned the project. He paid to the plaintiff the sum of $12,000 in accordance with the provisions of article 5 of the agreement. Plaintiff demanded that the defendant pay to him the amounts which he, the plaintiff, had expended for the drafting of plans and specifications by the engineering firm employed by him, and the amounts expended by him for reproduction of the plans and drawings. These amounts defendant refused to pay, and the present action was instituted.

The court rendered judgment in favor of the plaintiff and against the appellant for the sum of $4,971.61, that being the total amount which had been expended by the plaintiff as hereinbefore recited.

---

Article 4, shall be a sum equal to the rate or rates of commission arising from this agreement, computed upon the final cost of the Work.

"Payments to the Architect, other than those on his fee, fall due from time to time as his work is done or as costs are incurred.

"No deductions shall be made from the Architects' fee on account of penalty, liquidated damages, or other sums withheld from payments to contractors. . . .

"5. PAYMENTS:—*Payment of fees for Architects' services shall be made as follows*:

"*$1,000.00 for preliminary drawings, receipt of payment of which sum having been made in 1955.*

"*$12,000.00 for working plans, specifications and obtaining bids at the rate of $1,000.00 per week beginning February 27, 1956 and continuing until paid.*

"*The balance to be paid as agreed between parties hereto after completion of working plans, specifications, receipt of bids and owners financing negotiations. It being understood, owner will diligently conduct financing negotiations.*

"13. Owner has option to abandon work at any time after completion of working plans and specifications without further obligation on his part. Provided, however, if owner start work at any time within two (2) years of the date of this agreement, Architect shall be entitled to his fees hereunder."

Plaintiff based his right to reimbursement for the amounts expended by him on article 2 of the contract. Defendant resisted recovery upon the grounds that article 2 did not entitle plaintiff to reimbursement unless the incurring of the expense had first been approved by him, and that the services rendered by the engineering firm and in the reproduction of the drawings were services which the plaintiff had contracted to perform and for which he had been paid.

In his answer to the complaint, the defendant pleaded, as a special defense, that the plaintiff in order to induce him to enter into the contract had made certain false and fraudulent representations to him, among which was the representation that the cost of the building would not exceed that estimated by the plaintiff; that this representation was false was known by the plaintiff to be false; that the defendant relied upon it; that in truth and in fact the estimated cost of the building, after the completion of the working plans and specifications exceeded the plaintiff's representation as to costs by at least $100,000 and that by reason of said fraudulent representations, there was no consideration for the promise of the defendant to reimburse plaintiff for the expenditures in question.

As a third separate defense, he alleged that at the time the contract was negotiated, plaintiff represented that the fees of $13,000, as provided for in article 5 of the agreement, would be the total fees required to be paid by the defendant for "working plans, specifications and obtaining bids," that in the event the contemplated work was abandoned there would be no additional cost or expense of any kind and that defendant would not be asked or required to reimburse plaintiff for any expenditures made by plaintiff for any engineering work and that the alleged expenditures for which reimbursements were sought *were voluntarily made* by the plaintiff for his *sole use and benefit*. We have grave doubt that either of these so-called special defenses stated facts constituting a special defense to the action, but inasmuch as the pretrial order stated them as issues, and as the case was tried upon the theory that they did present a defense, we will so assume.

Appellant assigns as error the refusal of the trial court to receive and consider parol evidence for the purpose of ascertaining the meaning of article 2 of the agreement.

At the trial of the action, evidence was offered and received by both the plaintiff and the defendant as to the circumstances surrounding the execution of the agreement and as to the

conversations between the parties relative to the services to be performed by the plaintiff and the necessity of employing engineers to perform part of the work of preparing the final plans and specifications.[2] On several occasions during the trial, the trial court ruled that article 2 was unambiguous; that under it, the plaintiff was not required, in order to be entitled to reimbursement, to secure from the defendant approval of expenses incurred by plaintiff for any of the items of expense specifically set forth in article 2; that it was only required to secure such approval on account of ''other disbursements on his account'' and ruled that he would receive and consider the parol evidence which we have mentioned only upon the issues presented by the special defenses of fraud and voluntary payments.

Whether a contract is or is not ambiguous is a question of law, first to be determined by the trial court, but its determination is not binding on appeal. (*Brant* v. *California Dairies, Inc.*, 4 Cal.2d 128, 133 [48 P.2d 13].)

We are convinced that the court was in error in holding the contract to be unambiguous. [ A contract is ambiguous when on its face it is capable of two different reasonable interpretations. (*Woodbine* v. *Van Horn,* 29 Cal.2d 95, 104 [173 P.2d 17]; *Diebold, Inc.* v. *State Board of Equalization,* 168 Cal.App.2d 628, 639 [336 P.2d 650].) Certainly it could be reasonably contended that under article 2 of the contract the owner's approval was required before the plaintiff would be entitled to reimbursement for any expenditure made on his own account. This is true even when article 2 is read alone, but when it is read in conjunction with article 1 of the contract, specifying the work that plaintiff had undertaken to do for the agreed fee of 7 per cent, or when read with article 5 of the contract as to the work he undertook to do for the fee of $12,000, the ambiguity becomes even more apparent. Certainly, it could not be said, that if the contract was interpreted as requiring the appellant's approval of any expenditure made for work that might reasonably be found to be work which the plaintiff had contracted to perform for an agreed price, such an interpretation would be unreasonable or that it did not express the intent of the parties. So, too, the construction contended for by the plaintiff, and which was adopted by the trial court, is a reasonable one.

The contract here being ambiguous, the court should have received extrinsic evidence which would put the court in the

---

[2] We will hereinafter set forth this evidence in more detail.

position of the parties, and enable the court to determine the intention of the parties, and the evidence which it might have and should have received concerned not only the circumstances surrounding the execution of the contract but relevant conversation between the parties, which would tend to explain the meaning of the contract. (*Walsh* v. *Walsh*, 18 Cal.2d 439, 444 [116 P.2d 62].)

In the present case, the court did receive, for the limited purposes of the defense of fraud,[3] evidence as to the circumstances surrounding the execution of the agreement and evidence as to the conversations that occurred between the parties. Respondent testified that he understood that appellant and his associates did not want to incur obligation to proceed with erecting the building and thereby become obligated to pay 7 per cent of its cost to the architect, and that in order to make it possible that they could ascertain the costs as a minimum fee expense he had been willing to prepare working drawings and specifications, basically at a fee of 7 per cent, but in the event "that it did not proceed, that I would do it for an estimated cost of $12,000, and that this would be for the services of architectural drawings and structural engineering drawings and calculations only, and that the costs of mechanical engineers, electrical engineers, and the costs of surveyors and soils engineers would be paid by the owner." He further testified that he would be obligated to secure bids for the erection of the building, and in order to do so, it would be necessary to have not only working plans and specifications, but also plans and specifications for the plumbing, the electrical work and the mechanical work, and that he stated to appellant that he would engage a firm to prepare the specifications and plans for the electrical work; that he did not do that kind of work; that he was not licensed to do electrical work.

The defendant testified that on the day of the execution of the agreement, but before it was signed, the plaintiff stated that he was an architect and an engineer, competent to create the set of plans and specifications needed for the entire building; that he was an engineer and competent to do it; that he was going to do all of the engineering work, and that plaintiff did not make any statement as to going outside for engineering work. The evidence further showed that it was the intent

[3]The defense of voluntary payments is only another way of stating that the expenditures required plaintiff's approval and that his approval was not given, and that, therefore, the plaintiff was a volunteer in making them.

of the parties that plans and specifications should be prepared as cheaply as possible in order that the defendant might determine whether or not he could finance the project and proceed with the work. In view of the provisions of article 1 of the contract, that the architect's services should, among other things, consist of preparing working drawings, specifications, etc., *for electrical and other mechanical work,* and in view of the provisions of article 5 that the plaintiff should receive $12,000 for *working plans, specifications* and obtaining bids, it seems to us self-evident that the court might, if he believed the testimony given by the defendant, have determined that the parties contemplated that all work, including the plans and specifications for the electrical and plumbing work, should be performed by the plaintiff in consideration of his fee of $12,000, and would, therefore, have construed clause 2 of the contract as requiring the consent of the defendant to the employment of any other persons to do a part of that work.

It is evident from the record that the trial court did not give any consideration to the oral testimony as to the surrounding circumstances, or as to the conversation, between the parties, and, in fact, as we have heretofore pointed out, he expressly stated that he would not do so. We cannot say how he would have resolved the conflicts in the evidence or to what conclusion he would have come had he taken this evidence into consideration in interpreting the contract.

The contract being ambiguous, if the parol evidence had been received by the court, the question of the meaning of the contract would have become one of fact. It was the province of the trial court, and it is not the province of this court, to weigh the evidence and decide this question of fact. (*Walsh* v. *Walsh, supra,* 18 Cal.2d 439, 444; *Stevenson* v. *County of San Diego,* 26 Cal.2d 842, 844-845 [161 P.2d 553]; *Estate of Rule,* 25 Cal.2d 1, 11 [152 P.2d 1003, 155 A.L.R. 1319].)

In view of the fact that the judgment must be reversed and as the other errors complained of by the appellant here will not arise on a new trial of the case, it is unnecessary that we pass upon them.

The judgment is reversed.

Fox, P. J., and Ashburn, J., concurred.