C. N. CLOSE–SMITH, an Underwriter at Lloyd's, London, in behalf of himself and those other Underwriters at Lloyd's subscribing Certificate L 60585, and

A. G. Wrightson, an Underwriter at Lloyd's, London, in behalf of himself and those other Underwriters at Lloyd's subscribing Certificate L 60586, and

J. E. Green, an Underwriter at Lloyd's, London, in behalf of himself and those other Underwriters at Lloyd's subscribing Certificate LM 22192, Orion Assurance Company, Ltd., London and Overseas Assurance Company, Ltd., Excess Insurance Company, Ltd., and World Auxiliary Assurance Company, Ltd., each subscribing Certificate LM 22192, Plaintiffs,

v.

J. N. CONLEY, Defendant.

Civ. No. 61–381.

United States District Court
D. Oregon.

May 20, 1964.

Robert T. Mautz, Mautz, Souther, Spaulding, Kinsey & Williamson, Portland, Or., for plaintiffs.

Leo Levenson, Portland, Or., for defendant.

KILKENNY, District Judge.

Plaintiffs, in this cause, and in a similar action against J. W. Briggs, seek a determination of their liability, if any, under certain insurance policies. Jurisdiction is grounded on diversity of citizenship and the Federal Declaratory Judgment Act, 28 U.S.C. § 2201.

On January 1, 1959, plaintiff I issued to defendant, a certificate of third-party property damage insurance, effective for the policy period to January 1, 1962. In said certificate, within a limit of liability of $50,000.00, the plaintiff I, among other things, made certain agreements.[1]

An attached endorsement carried other important provisions.[2] Contemporaneously with the issuance of the above certificate, plaintiff II issued to defend-

---

1. * * * * *
"To pay within the limits of liability as expressed in Condition No. 3 of this Form, any loss by reason of the legal liability of the Assured on account of loss of or injury to or destruction of property of others including loss of use thereof and/or consequential loss or damage resulting from such loss, injury or destruction of property of others occurring during the period of this policy and arising from any cause whatsoever out of the operations, activities, work and/or business of the Assured, including such legal liability of the Assured resulting from work and/or operations and/or activities of Sub-Contractors or others in the United States of America, its territories or possessions and/or Canada."

"To investigate and/or to defend in the name and on behalf of the Assured all claims or suits for such injury or damage for which the Assured is, or is alleged to be, liable."

2. "CONTRACTUAL ENDORSEMENT
 * * * * *
"Endorsement effective: January 1, 1959
"1. It is agreed that Insurance under this Policy shall, subject otherwise to the limitations and conditions thereof, automatically extend to and cover any loss by reason of liability assumed by the Assured under certain written contracts entered into between the Assured and the other parties thereto in connection with the operations, activities, work and/or business of the Assured; or their sub-

ant another certificate which provided excess third-party property damage insurance, over and above the insurance covered by plaintiff I, with a limit of liability to $50,000.00 for the same policy period. Said certificate used the same language as used in number I, with the exception that it contained no obligation to investigate or defend.

At the same time, plaintiff III, issued to defendant what is termed an "umbrella policy" with a limit of liability of $1,-000,000.00, to insure third-party damage liability of defendant. This last mentioned certificate did not require the assured to investigate or defend, and had a special limit of liability clause.[3]

The liability assumed by plaintiff III is couched in different language than that used in the first two certificates.[4]

Prior to June 28, 1960, defendant and J. W. Briggs were licensed, as a joint venture, by the Contractors License Board of the State of California, for the purpose of submitting a bid to the Department of Public Works of that state to do certain work on its Highway 40. Said joint venture was the successful bidder on said project, and, on June 28th, of that year, entered into a con-

contractors as described in Paragraph 1 of the Insuring Agreement.

\* \* \* \* \*

"13. OTHER INSURANCE. If the Assured is insured under any other policy against loss covered by this policy, Insurance under this Policy shall be excess and not contributing insurance over and above the valid and collectible insurance under any policy in which the Assured is covered."

3. \* \* \* \* \*

"Underwriters hereon shall only be liable for the ultimate net loss the excess of either

"(a) the amount recoverable under underlying insurances as set out in the attached schedule

or

"(b) $25,000.00 ultimate net loss in respect of each occurrence not covered by said underlying insurances, (hereinafter called the "underlying limits"):

and then only up to a further $1,000,000.-00 in all in respect of each occurrence—subject to a limit of $1,000,000.00 in the aggregate for each annual period during the currency of this Policy; separately in respect of Products Liability and in respect of Personal Injury (fatal or nonfatal) by Occupational Disease sustained by any employee of the Assured."

\* \* \* \* \*

4. "INSURING AGREEMENTS

"1. COVERAGE—

"Underwriters hereby agree, subject to the limitations, terms and conditions hereinafter mentioned, to indemnify the Assured for all sums which the Assured shall be obligated to pay by reason of the liability

"(a) imposed upon the Assured by law; or

"(b) assumed under contract or agreement by the Named Assured and/or any officer, director, stockholder, partner or employee of the Named Assured, while acting in his capacity as such,

for damages, direct or consequential and expenses, all as more fully defined by the term "ultimate net loss" on account of personal injuries, including death at any time resulting therefrom, and property damage, caused by or arising out of each occurrence happening anywhere in the world.

\* \* \* \* \*

"1. ASSURED:—

"The unqualified word "Assured", wherever used in this policy, includes not only the named Assured but also:—

"(a) any officer, director, stockholder, partner or employee of the Named Assured, while acting in his capacity as such, and any organization or proprietor with respect to real estate management for the Named Assured;

"(b) any person, organization, trustee or estate to whom the Named Assured is obligated by virtue of a written contract or agreement to provide insurance such as is afforded by this policy, but only in respect of operations by or on behalf of the Named Assured or of facilities of the Named Assured or used by them;

\* \* \* \* \*

"J. OTHER INSURANCE:—

"If other valid and collectible insurance with any other insurer is available to the Assured covering a loss also covered by this policy, other than insurance that is in excess of the insurance afforded by this policy, the insurance afforded by this policy shall be in excess of and shall not contribute with such other insurance. Nothing herein shall be construed to make this policy subject to the terms, conditions and limitations of other insurance."

tract with said department for the prosecution of such work.

On or about June 29, 1960, in compliance with an oral agreement previously existing, defendant, J. W. Briggs and G. D. Dennis & Sons, Inc., a corporation, created another joint venture, in writing, for the purpose of completing the aforesaid contract, which contract, with the consent of the State of California, was assigned to the said joint venture which included G. D. Dennis & Sons, Inc. The said association thereafter being known as Briggs-Conley-Dennis, a licensee of the Contractors License Board of California, the same being the joint venture subsequently herein mentioned.

Said venture thereafter procured third-party property damage insurance in the aggregate amount of $1,000,-000.00, in the Industrial Indemnity Co., to insure and protect the joint venture and its members for legal liability arising from third-party property damage growing out of the operations of the joint venture in the performance of the contract aforesaid.

The premium on each of the certificates issued by plaintiffs I and II was partially paid in advance, with an additional premium to be based upon audits of the payrolls of defendant, as submitted by him to the insurance brokers, through whom said certificates were purchased.

During the course of the operations of the joint venture, a forest fire occurred in the work area. On the theory that the fire started through the negligent operations of the venture, and, the individual members thereof, a number of law suits were instituted in the Superior Court of the State of California, the demands in said actions aggregating approximately $6,000,000.00. The defendants in said actions have denied responsibility for said fire and the resulting damage.

PLAINTIFFS' CONTENTIONS

Plaintiffs contend that the parties never intended the certificates to cover a liability created by the operation of a joint venture, unless such venture was specifically included, by endorsement, on the certificates.

As evidence of the intentions of the respective parties, to exclude all risks which were not specifically endorsed on the policies, the plaintiffs point to the following endorsements attached to the respective policies.

(1) "It is understood and agreed that WEST RENTALS, INC. is added as an additional assured under this policy certificate." (L 60585 Endorsement 6, 12–18–58; L 60586 Endorsement 6, 12–18–58; LM 22192 Endorsement 3, 9–3–59)

(2) "It is understood and agreed that the PACIFIC POWER & LIGHT COMPANY are named as additional assureds hereunder but only as respects claims arising out of or in connection with work being performed by J. N. CONLEY for the PACIFIC POWER & LIGHT COMPANY in the diversion of Spieleye Creek at Yale Junction near Cougar, Washington." (L 60585 Endorsement 9, 12–31–58; L 60586 Endorsement 7, 12–31–58; LM 22192 Endorsement 1, 12–31–58)

(3) "It is understood and agreed that as respects claims arising out of or in connection with work being performed by J. N. Conley; The State of Oregon, The State Highway Commission and members thereof, its officers, agents, and employees are hereby included as named insureds in the herein numbered policy, except as to claims against the primary named insured for injury to their persons or damages to any of its or their property." (L 60585 Endorsement 10, 4–30–59)

(4) "It is understood and agreed that the following are added as additional assureds under this policy/certificate: (1) J. N. Conley and G. D. Dennis & Sons, dba J. N. Conley-G. D. Dennis & Sons, (2) J. N. Conley and G. D. Dennis & Sons dba Dennis & Conley." (L 60585 En-

dorsement 11, 5–14–59; L 60586 Endorsement 8, 5–14–59)

(5) "It is understood and agreed that EDWIN L. STEARNS is named as an additional assured under this policy/certificate but only as respects claims arising out of or in connection with or growing out of quarrying operation in property of EDWIN L. STEARNS." (L 60585 Endorsement 12, 5–14–59; L 60586 Endorsement 9, 5–14–59)

(6) "It is understood and agreed that C.&D RENTALS CORPORATION is named as an additional assured hereunder." (L 60585 Endorsement 13, 5–4–60; L 60586 Endorsement 10, 5–4–60; LM 22192 Endorsement 4, 1–27–60)

(7) "It is hereby understood and agreed that with respect to automobile property damage liability this policy/certificate is extended to cover the joint venture composed of J. W. BRIGGS CONSTRUCTION CO., J. N. CONLEY AND G. D. DENNIS & SONS, INC., DBA BRIGGS-CONLEY-DENNIS for any claims arising out of the use of automobiles owned by J. N. CONLEY." (L 60585 Endorsement 14, 9–5–60; L 60586 Endorsement 11, 9–7–60)

(8) "It is understood and agreed that J. N. CONLEY, ZELMA CONLEY, MICHAEL J. CONLEY and LINDA CONLEY, individually are named as additional assureds under this policy/certificate." (L 60586 Endorsement 13, 1–31–61)

Likewise, attention is called to the method, and manner, in which the premiums were to be paid on the respective policies:

(I) L 60585 (Endorsement 8): "It is understood and agreed that the premium hereon is a deposit only, subject to adjustment MONTHLY at a rate of (88 cents) per $100.00 of ALL PAYROLL, subject, however, to an annual minimum premium of $250.00".

(II) L 60586 (Endorsement 5): "It is understood and agreed that the premium hereon is a deposit only, subject to adjustment MONTHLY at 10 per cent of the premium as developed under primary policy L 60585 carried in Lloyd's, London, subject, however, to an annual minimum premium of $50.00".

(III) LM 22192 (Endorsement 2): "It is understood and agreed that the premium charged hereon is a FLAT PREMIUM not subject to adjustment".

Of great importance, argue the plaintiffs, are the actions of defendant and Briggs in connection with the California joint venture contract as follows:

(1) Their license as a joint venture by the State of California.

(2) The creation of another joint venture wherein a corporation, G. D. Dennis & Sons, Inc. appeared for the first time.

(3) The sole purpose of the joint venture agreement being to perform the California contract.

(4) The provisions of Paragraph 11 of the joint venture agreement which provided that the particular venture should have no relationship to other works or contracts performed or to be performed by the members and that each of the members should continue to operate as an individual business during the existence of the joint venture.

(5) The provision that separate books should be established for the venture, including separate and distinct bank accounts with a separate and distinct payroll account.

(6) The purchase by the joint venture of a third-party property damage liability insurance policy with a penal limit of $500,000.00 from the Industrial Indemnity Company, with excess from certain underwriters at Lloyd's, London, in the sum of $500,000.00.

(7) The certificates under scrutiny were secured by defendant through his agent, Dooly & Co., through Rathbone, King & Seeley. Dooly & Co. made an unsuccessful bid for the insurance on the California joint venture and subsequently asked to write the excess policy.

(8) During the effective period of the certificates (January 1, 1959, to January 1, 1962) defendant entered into three joint ventures (1) Dennis-Conley (2) Conley-Hannan and (3) Briggs-Conley-Dennis, here in question. The Dennis-Conley joint venture, as aforesaid, was endorsed for coverage under policies issued by I and II. This venture made regular payroll reports to plaintiff separate and apart from defendant's individual payroll and premiums were calculated from the audits of said payrolls and were charged to said venture in addition to premiums charged the defendant on his individual payroll. Likewise, the venture Briggs-Conley-Dennis was endorsed for coverage under said policies *solely and only* for automobile property damage liability arising out of the use in the joint venture of automobiles owned by defendant, J. N. Conley.

(9) Of significance, it is claimed, is the fact that the joint venture of Conley-Hannan or Hannan-Conley was not endorsed for coverage under any of the certificates. The Conley-Hannan and the venture here in question, purchased separate insurance for the protection of their respective joint ventures and the individual members thereof, and submitted no payrolls to the plaintiffs to be audited for premium purposes and paid no premiums for coverage under the certificates involved.

## PLAINTIFFS I AND II POLICIES

Threshold questions presented are whether the Court should consider, (1) the testimony offered in connection with usual and customary practices in connection with the placing of endorsements on policies such as issued by plaintiffs I and II and, (2) extrinsic evidence as to the intentions of the parties.

■ Both California[5] and Oregon[6] recognize that a trial judge, in construing a written instrument, in order to be placed in the position of those whose language he is interpreting, may receive evidence on the surrounding circumstances and the situation of the subject and of the parties. While I am of the belief that California law would apply to the endorsement, with reference to the California venture, my research, and that of counsel, reveals no distinction, of significance, between the law of the two states on the problems here presented.

■ Insurance policies must be interpreted in the light of the common understanding of the parties. Baalmann v. Firemen's Insurance Company of Newark, N. J., 168 Cal.App.2d 287, 335 P.2d 744 (1959); Clark Motor Co. v. United Pacific Insurance Co., 172 Or. 145, 139 P. 2d 570. Endorsements become part of an insurance contract and must be construed with it. 13 Appleman, Insurance Law & Practice, 290. Jew Fun Him v. Occidental Life Insurance Company, 88 Cal.App.2d 246, 198 P.2d 711; Narver v. California State Life Insurance Co., 211 Cal. 176, 294 P. 393, 71 A.L.R. 1374. The effect of an endorsement is to modify, to the extent of the endorsement, the terms and conditions of the original policy, Votaw v. Farmers Automobile Insurance Exchange, 15 Cal.2d 24, 97 P.2d 958, 126 A.L.R. 538, and where a conflict exists between the provisions of the policy and the provisions of the endorsement, the latter must control. Smooth v. Metropolitan Life Insurance Company (La.App.) 157 So. 298.

■ It is my belief that the placing of the many endorsements on the policies issued by plaintiffs I and II and, in particular, the endorsement making specific

---

5. C.C.P. § 1860; C.C. § 1647, 12 Cal.Jur. 2d 335.

6. ORS 42.220; Card v. Stirnweis, 232 Or. 123, 374 P.2d 472 (1962).

mention of the California job, and the securing of outside insurance on that job, casts considerable doubt on the intention of the parties and thus creates an ambiguity which permits the introduction of extrinsic evidence to discover the intentions and explain the actions of the parties.

■ To be recognized is the rule that, under ordinary circumstances, extrinsic evidence may not be received to vary, change or contradict the clear and explicit terms of an insurance contract. Jaloff v. United Auto Indemnity Exch., 120 Or. 381, 250 P. 717; 18 Cal.Jur.2d, Evidence § 277. A well recognized exception to this rule is that ambiguous language is not protected, but, on the other hand, invites reception of evidence to clarify the ambiguity. Doherty v. Harris Pine Mills, Inc., 211 Or. 378, 315 P. 2d 566; Garrett v. Eugene Medical Center, 190 Or. 117, 224 P.2d 563; 18 Cal. Jur.2d, Evidence § 277. The rule permitting the use of parole evidence, to give meaning to ambiguous language, is applied to insurance contracts. Jaloff v. United Auto Indemnity Exch., supra; Zurich General Accident and Liability Insurance Co. v. Carlton and C. R. Co., 133 Or. 398, 291 P. 349. Evidence of the intention of the parties is admissible in aid of construction of ambiguous provisions of an insurance policy and its reception does not violate the parole evidence rule. Upper Columbia River Towing Co. v. Glens Falls Insurance Co., D.C., 179 F.Supp. 705.

■ An ambiguous contract, which may be aided by parole evidence, is a contract, the language of which is doubtful or uncertain or susceptible of more than one meaning. Hall v. Equitable Life Assurance Society of the United States, 295 Mich. 404, 295 N.W. 204, 207; Doherty v. Harris Pine Mills, Inc., supra, p. 401; In re Black's Estate, 211 Cal. App.2d 75, 27 Cal.Rptr. 418, 424; Pedersen v. Fiksdal, 185 Cal.App.2d 30, 7 Cal. Rptr. 874.

■ In such an inquiry, it is the duty of the Court to consider all circumstances accompanying or surrounding the transactions, giving great weight to the principal apparent purpose of the parties, and so far as possible placing itself in the position of the contracting parties. Then, based on all of the evidence, the Court should make a specific finding on the intention of the parties. Doherty v. Harris Pine Mills, Inc., supra.

To be kept in mind is the agreed fact that J. W. Briggs was named as the "sponsor" of the California venture and what might be termed the business manager of that project. Of great importance is the fact that both Conley and Briggs had individual and other joint venture operations at the time they obtained the California job and the insurance thereon. Each of the other jobs, where another party was interested, was specially endorsed on the policies of plaintiffs I and II or specific insurance was obtained. Of greater importance is the fact that Mr. Randall was acting as agent for Mr. Briggs, and, he was the one who attempted to make an explanation of why he placed the endorsement in the footnote [7] on the Briggs' policies 60681, 60682 and 60712. These policies, for the purposes of these trials, being identical with plaintiffs' policies I and II issued to Conley, those policies being issued on the identical dates and covering the same period of time as the said Conley policy.

7. "ENDORSEMENT 7

"Attached to and forming part of Policy/Certificate No. L 60681 Issued to J. W. BRIGGS CONSTRUCTION COMPANY, et al Endorsement effective MARCH 21, 1960

IT IS UNDERSTOOD AND AGREED THAT BALDWIN CONTRACTING COMPANY, INC. and/or BALDWIN CONTRACTING COMPANY, INC., and J. W. BRIGGS, a joint venture are named as additional assured hereunder, but only as respective to automotive equipment owned, operated, maintained, or used by J. W. Briggs Construction Company and Bend Construction and Equipment Co.

IT IS FURTHER UNDERSTOOD AND AGREED that the foregoing applies only

The record is clear that defendant Conley and defendant Briggs were individually engaged in the construction business at the time of the issuance of all the policies. The endorsements demonstrate, beyond question, that the premiums on the policies, other than the "Umbrella Policy", were to be based on the payrolls. Therefore, we may logically inquire as to the nature of the payrolls contemplated by the parties. A partial answer is supplied by the following language of plaintiff No. I policy:

"7. BASIS OF PREMIUM. The premium for this Policy shall be computed as follows:—

"(A) By applying the rate(s) disclosed below to the *entire remuneration earned by all persons employed by the Assured* (except chauffeurs) in connection with the work covered by this Policy, and to each $100. of the total cost of all work let or sublet by the Assured to independent contractors. (Emphasis supplied.)

"(B) Premium rates for this insurance shall be:—

\* \* \* \* \* \*

"The advance premium for this
 1250.00.
Policy is $~~700.00~~

"The annual Minimum Premium for this Policy is $250.00"

"8. IT IS UNDERSTOOD AND AGREED that the premium hereon is a deposit only subject to adjustment monthly at a rate of .88 per $100. of all payrolls, subject, however, to an annual minimum premium of $250.00."

From the foregoing, it is evident that the parties intended that Conley should report the payroll on all "persons employed by assured" and all work covered by the policies. The fact is that no report of the payroll on the California venture was ever made to plaintiffs I and II, by either Conley, Briggs or the joint venture itself. This provision and the endorsements certainly cast some doubt on the intention of the parties on the subject of including, in the coverage, what might be said to be the primary obligation of a large joint venture such as that in California. A fact which should be taken into consideration is the right of action, if any, of plaintiffs I and II for the recovery of premiums that might have been earned on the California venture. No doubt, both Conley and Briggs would in such case, claim they had already paid those premiums to the Industrial Indemnity Company, the prime insurance company on the California venture, and, would rely, in support of their positions, on the identical endorsements which formed the basis of plaintiffs' position. There is no doubt but that the amount and the method of payment of premiums are significant factors which should be taken into consideration in construing an insurance policy and it is a fair assumption that the parties intended to limit the risk in accordance with the premium established and charged. Prather v. American Motorists Insurance Co., 1949, 2 N.J. 496, 67 A.2d 135, 138; Couch, Insurance, 1945 Cum.Supp. Vol. 1, Sec. 171–1, p. 159; U. P. Terminal Federal Credit Union v. Employers Mutual Liability Insurance Co., 1961, 172 Neb. 190, 109 N.W.2d 115, 119; Couch on Insurance 2d, Sec. 15–51, p. 742. The defendant if sued for the payroll premiums would, no doubt, argue that the following endorsement on the policies of plaintiffs I and II:

"IT IS HEREBY UNDERSTOOD AND AGREED that with the special automobile property damage liabil-

to claims arising out of or in connection with work being performed on California State Highway Project 11-Tri-20-B.
IT IS FURTHER UNDERSTOOD AND AGREED that the foregoing shall not act to increase Underwriters' limit of liability under this Policy/Certificate.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.
DATED: April 15, 1960
 Portland, Oregon
 RATHBONE, KING & SEELEY
————————————————————————"
LLOYD'S

ity this policy/certificate is extended to cover the joint venture composed of J. W. Briggs Construction Co., J. N. Conley and G. D. Dennis & Sons, Inc. dba Briggs-Conley-Dennis for any claims arising out of the use of automobiles owned by J. N. Conley."

rather conclusively shows a definite intention to cover the California venture, only as to the J. N. Conley automobiles and that to specifically include that coverage would exclude any right to recover payroll premiums on the venture mentioned in the endorsement. *Expressio unius est exclusio alterius.* I am convinced of the validity of this argument and, I find no good reason why the same logic should not be applied to the plaintiffs' contentions here under consideration. Significantly, the above endorsement is the only place in the insurance contracts where reference is made to the California venture. Where special provisions are incorporated in a contract, those provisions must control. Rayburn v. Crawford, 187 Or. 386, 211 P.2d 483. Furthermore, the important language of the endorsement is typewritten. The typewritten material must prevail over the printing in the main insurance certificate.

The intention of the parties to the joint venture, including Conley and Briggs, that the venture should be separate and distinct from the other business operations of the respective individuals, is made abundantly clear by the language of the agreement.[8] This language, when read in the light of the provision of the joint venture agreement with reference to the employees of the joint venture, shows a clear intent that the payroll of the venture was to be entirely separate, apart and distinct from the payroll of Conley and Briggs in their individual capacities.[9] Of utmost importance, on the question of intent, is the fact that a special endorsement with reference to *other joint ventures* was actually made part of the policies and that a special premium was established and charged for the addition of the venture and those payrolls were separately submitted. Of course, the obvious answer to the failure to submit the payrolls of the California venture is, (1) the payrolls of that venture were to be submitted to the Industrial Indemnity Company for the establishment of a premium, and (2) neither Conley nor Briggs ever intended to pay a double premium, and (3) they considered the California venture entirely separate and distinct from their individual enterprises and other ventures. Summarizing, the defendant, Conley, never asked for a premium rate and never included in his reports to plaintiffs the payroll of the California venture, although he did submit a record of the payroll and pay premiums thereon for all other joint ventures endorsed for coverage on the policy. On the other hand, as required by the joint venture agreement, the payrolls for the Cali-

8. * * * * *

"11. It is understood that this joint venture shall have no relationship to other work or contracts performed or to be performed by the members hereto, and it is contemplated that each of the parties hereto shall continue to operate his individual business during the existence of this joint venture. * * *"

 * * * * *

"8. All personnel employed in the joint venture activities shall be considered as employees of the joint venture and compensated by the joint venture despite the fact that such personnel may be regularly employed by any member of this joint venture.

 * * * * *

9. "7. Proper books and records reflecting the joint venture activities shall be kept and maintained by an adequate field and office force. * * *"

 * * * * *

"13. All funds of the joint venture shall be deposited in a general account * * * signature cards shall be executed by the joint venturers. * * *"

 * * * * *

"14. *In addition to the general account, a payroll account shall be set up at such bank or banks as the parties may agree.*" (Emphasis Supplied)

 * * * * *

fornia venture were submitted to the insurance company with which insurance was secured for the specific California venture. The reasons given and arguments made by defendant for failure to submit the payrolls are quite unconvincing.

Of fundamental soundness, is the argument, that if defendant's positions are correct, an individual could obtain certificates, such as those issued by plaintiffs I and II, for a nominal premium, take a minimum amount, or no insurance, on his outside ventures with third persons, and thus engage in enterprises involving millions or hundreds of millions of dollars and retain full coverage, although never reporting on those payrolls. Thus far I have only considered the written documents.

Previously, I expressed an opinion that plaintiffs' certificates I and II were of doubtful meaning and ambiguous. Neither party has a quarrel with the rule that an insurance policy must be construed most strongly against the insurer, Employers' Liability Assurance Corporation, Ltd. of London, England v. Portland Electric Power Company, 15 F.2d 976 (9 Cir. 1926), nor the rule that any reasonable doubt as to the meaning of the language of the policy must be resolved against the insurance company. Roberts v. Union Insurance Society, 215 Or. 183, 332 P.2d 600. These rules, however, must give way to the primary and inflexible rule that policies of insurance, like all other contracts, are to be construed so as to ascertain and declare the true intent of the parties. All other rules of construction are secondary and are used only for the purpose of giving proper application to the primary rule. It is presumed that the parties intended each clause to accomplish some specific purpose and it is not proper to assume such clause is without meaning. I-L Logging Co. v. Manufacturers & Wholesalers Indemnity Exchange, 202 Or. 277, 317, 318, 273 P.2d 212, 275 P.2d 226.

To assist in ascertaining the intention of the parties, I now turn to the testimony of the witnesses at the time of the trial. I do not believe that the testimony of either the defendant, Conley, or the defendant, Briggs, is of any particular importance. It is quite clear that each of them permitted his insurance agent to arrange for and procure what was considered proper insurance, as the occasions arose.

I was impressed with the conduct, demeanor and testimony of I. F. Redwine, a witness called on behalf of the plaintiff. True enough, this witness, as a broker, represents the plaintiffs and I have taken that fact into consideration in analyzing his testimony. Nevertheless, his testimony is clear and convincing. My holding that the policies are ambiguous, permits the introduction of extrinsic evidence to establish the true intention of the parties. For that reason, I overrule all objections of the defendants to such evidence, insofar as it may throw light on the true intentions of the parties.

Mr. Redwine is an insurance underwriter, having been associated with a Portland firm for in excess of eleven years. His testimony reveals that a proper premium, to be charged on certificates similar to plaintiffs I and II, is based on the nature of the work in which the contractor is engaged, the specific hazards of the particular work, the contractual obligations of the contractor on the particular job and the previous experience of the contractor. The usual and customary rates and premiums on such contracts are based on the payroll, which payroll is customarily secured through the agent with whom the business is placed by the assured. In this specific instance it would be Dooly & Co. of Portland. His testimony reveals that it is quite commonplace for a contractor to call on his insurance agent for an extension of his coverage to a joint venture, or other relationship with third persons, which becomes effective subsequent to the date of the original certificate. At such time the insurer makes the same inquiry into the specific venture as it would make in the first

instance, including, the specific hazards and dangers involved, the size of the job, and the estimated amounts of the payroll. Only after such inquiry is made is the job added to the policy by way of endorsement. It may be at the same rate, or if extra and additional hazards are involved, then at a separate rate commensurate with the risk of the new venture. Mr. Redwine had written insurance for Conley for many years through Conley's agent, Dooly & Co., but had never dealt directly with Conley, nor had he personally met Mr. Briggs, that insurance being placed with him through Gordon Randall in Bend. The ventures which were added to the policies by way of endorsements were subject to separate premiums which were charged to Conley. A separate premium being charged for each new payroll. I am not giving consideration to the Hannan endorsement for the reason that the same was made a considerable time after this loss occurred. The correspondence between Redwine and Dooly & Co. and Gordon Randall, clearly illustrates that these agents of the defendants were asking for bids on the identical insurance later covered by Industrial Indemnity. If they had been successful, then the coverage would have been added by endorsement to the policies I and II, the payrolls submitted and premiums paid thereon.

▮▮▮ No premium of any kind, nature and description was ever received by plaintiffs in connection with the joint venture here under consideration. Redwine's letter to Randall dated March 25th, although confined to the Briggs case, very graphically illustrates the plaintiffs' position with reference to the reporting of payrolls and premiums thereon.[10] Randall's reply clearly shows that the Industrial Indemnity policy was to cover the joint venture in California and "miscellaneous liability coverages as well as non-owned automobiles" and that the liability of the plaintiffs on the California project was limited to "automotive equipment, owned, operated, maintained or used by J. W. Briggs". That the premiums on the California venture were of considerable magnitude is disclosed by a communication in evidence dated July 15, 1960, some time before the fire, which estimated the premiums at between thirty and thirty-five thousand dollars. Of course, these premiums went to the Industrial Indemnity Company, the company placing the prime insurance on the venture. If the venture had been endorsed on the plaintiffs' policies I and II, these premiums, or like sums, would have been paid to the plaintiffs. The evidence shows that the usual and customary practice in the insurance business is to include coverage for such a venture by either adding the venture to the existing coverage or by writing a separate policy for the particular venture. There is no custom or practice of excluding the venture from the policy if the company was not successful in securing the coverage. All of the evidence convinces me that the parties to the certificates issued by plaintiffs I and II, never intended that the joint venture in California should be covered by such certificates, except for Conley's personal automobiles mentioned in the endorsement.

Likewise, from all of the evidence presented, I find that the parties to the three insurance certificates mentioned and described in the Briggs case, Civil No. 61–398, never intended that a venture such as that of Briggs-Conley-Dennis should be covered by the terms and conditions of those policies. While the endorsements on the Briggs policies may not create as much doubt as those on the

10. * * * * *
"As we discussed on the telephone, I have no objections to picking up this venture for property damage coverage on my policy, but I will, of course, *expect a full payroll report and premium. It would*

*appear pointless to cover this under two policies*, as nothing but confusion would arise."
* * * * *
(Emphasis supplied.)

Conley policies, the fact remains that similar endorsements were made and became part and parcel of the Briggs policy. These endorsements create sufficient doubt so as to make the policies ambiguous and, therefore, extrinsic evidence may be used to arrive at the intent of the parties. My finding is that the plaintiffs in the Briggs case have no liability on the California venture.

■ The testimony of defendant's witness, Randall, is entitled to little weight, when contrasted with the written material in evidence of which he was the author and executed by him prior to the time a controversy arose. Furthermore, his testimony is not in line with good common sense. His own intent, as indicated by his letters, demonstrates that the insurance coverage for the California venture was entirely new and distinct from all other exposures. Since he represented one of the defendants, his interpretation of the certificates, which was precisely the same as that of the plaintiffs, at the time he was attempting to secure the additional security on the California venture, is of great weight in arriving at the intent of the parties on the insurance certificates. For that matter, it is one of the most reliable means of arriving at the intention of the parties. Commercial Discount Co. v. Cowen, 18 Cal.2d 610, 116 P.2d 599; Universal Sales Corporation v. California Press Manufacturing Co., 20 Cal.2d 751, 128 P.2d 665; H. S. Crocker Co. v. McFaddin, 148 Cal.App.2d 639, 307 P.2d 429. His attempted explanations of the endorsements on the policies, simply stated, do not make sense.

## ANALYSIS OF CASES

A detailed analysis of the many cases cited by counsel would add little to the reasons for my conclusions. Many of the cases have been helpful in formulating my decision. None can be said to be precisely in point. For example, both plaintiffs and defendants cite Parks v. Riverside Insurance Co. of America, 308 F.2d 175 (10 Cir. 1962). There the

Court interprets the law of Oklahoma. The Oklahoma Courts maintain a distinction between a partnership and a joint venture, the latter being viewed as an entity in and of itself. Neither Oregon, McIver v. Norman, 187 Or. 516, 205 P.2d 137, 213 P.2d 144, 13 A.L.R.2d 749 (1949), nor California, Wyoming Pacific Oil Co. v. Preston, 171 Cal.App.2d 735, 341 P.2d 732 recognize such a distinction. For that matter, both Courts hold that there is no real distinction between a joint venture and a partnership. Although I have referred to the California operation as a joint venture, the contracts between the parties can well be construed as a partnership for that particular venture.

■ Hartigan v. Casualty Company of America, 227 N.Y. 175, 124 N.E. 789; Ardolino v. Ierna, 225 App.Div. 439, 233 N.Y.S. 477; Geitner v. United States Fidelity & Guaranty Co., 251 N.Y. 205, 167 N.E. 222; Crenshaw v. United States Fidelity & Guaranty Co. (Mo.App.1946) 193 S.W.2d 343; McKinney v. Truck Insurance Exchange (Mo.App.1959) 324 S.W.2d 773, and like cases present the opposite side of the coin, and would have greater weight if this happened to be a case where Conley or Briggs were bringing action as individuals on the Industrial Indemnity policy, which named the joint venture. Nevertheless, as I have said, those cases have been helpful in formulating my final conclusions. Other cases presenting the same viewpoint are National Auto Insurance Co. v. Industrial Accident Co., 11 Cal.2d 694, 81 P.2d 928 (1938) and C. E. Carnes & Co., Inc. v. Employers' Liability Co., 101 F.2d 739 (5 Cir.1939). Turning on the point of a drastic increase in the exposure is United Pacific Insurance Co. v. Northwestern National Insurance Co., 185 F.2d 443 (10 Cir. 1950). That a partnership may be treated as a separate entity, if that is the intention of the parties, is specifically recognized in United Pacific Insurance Co. v. Ohio Casualty Co., 172 F.2d 836 (9 Cir. 1949). However, in general, a partnership is not

regarded as a legal entity entirely separate and distinct from the individuals involved. First National Trust and Savings Bank of San Diego v. Industrial Accident Commission, 213 Cal. 322, 2 P.2d 347, 78 A.L.R. 1324; Goss v. Security Insurance Co., 113 Cal.App. 577, 298 P. 860; Wheatley v. Carl Halvorson, Inc., 213 Or. 228, 323 P.2d 49.

Defendant places considerable reliance on what he terms the contractual endorsement attached to the Certificates of plaintiffs I and II, and argues that the language of the endorsements specifically covers the California venture. It is argued that the language of the endorsements is considerably broader than the original coverage and that since those endorsements were attached to the original certificate, without an increase in premium, the parties must have intended to cover a venture, such as the one here in question. The particular clause has been construed by other courts, and, those constructions are completely opposed to defendant's contentions. Hudson River Concrete Products Co. v. Callanan Road Imp. Co., 5 A.D.2d 49, 168 N.Y.S.2d 801; Larsen v. General Casualty Co. of Wisconsin, (D.C.Minn.1951) 99 F.Supp. 300; General Casualty Co. of Wisconsin v. Larson, 196 F.2d 170 (8 Cir. 1952).

Defendant's counsel place great weight on the language of the automobile endorsements "ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED" and cite Oakland Stadium v. Underwriters at Lloyd's, 152 Cal.App.2d 292, 313 P.2d 602 (1957). I have read and thoroughly analyzed this case. There the Court was construing the provisions of the policy and the endorsements, without the aid of extrinsic evidence. Additionally, the facts and contentions in that case bear no reasonable resemblance to those before me. In arriving at my conclusions, I have given full recognition to all well known principles of law, urged by defendants, such as, that the Court will not, by implication, eliminate from, or write into, the insurance contract, provisions for the protection of an insurance company, City of Reedsport v. Hubbard, 202 Or. 370, 385, 274 P.2d 248, and that where the language of the policy is not doubtful, uncertain, or ambiguous, and does not call for construction, it must be given effect in accordance with the ordinary and generally accepted meaning of the words employed. Terminal News Stand, Inc. v. General Casualty Co., 203 Or. 54, 278 P.2d 158 (1954).

## UMBRELLA POLICY

### PLAINTIFF III

This is the policy issued to Conley, and individual members of his family, with a limit of $1,000,000.00. The policy carried a flat premium. No provision is made for additional premiums on account of payrolls, nor is there anything to indicate that liability was limited to any particular projects or jobs. As a matter of fact, the language of the contract is such that even though I gave full consideration to the extrinsic evidence in the case, there is nothing in that evidence which could lead me to a finding that plaintiff III was not liable on this policy.

It is my conclusion that the separate insurance on the venture in California in no way changed the nature, or character, of the coverage afforded by the umbrella policy and, that the policy should be enforced in accordance with its terms.

In the light of what has been said, I do not believe it necessary to pass on the fringe issue of contribution between the respective insurance groups. In any event, Industrial Indemnity Company is not a party to this action and my conclusions would be binding on no one.

Although defendant makes a contention on the allowance of attorney fees, I find nothing in the Briefs covering that point.

My findings are in favor of Plaintiffs I and II in the Conley case and in favor of Plaintiffs I, II and III in the Briggs case. As previously mentioned, I find in favor of the defendant, Conley, on the umbrella policy, Plaintiff No. III.

Findings in each case shall be presented in conformity herewith.

### SUPPLEMENTAL OPINION

Presented for decision is the issue of whether defendant is entitled to recover attorney fees on Policy III, under the provisions of ORS 736.325.[1]

To be kept in mind is the factual background as outlined in the original opinion. The major fact to keep in proper perspective, is that liability for the fire is admitted by neither plaintiffs nor defendant. No *recovery* has been allowed on the policy in this action, nor, for that matter, may there ever be such a recovery.

 The statute should be given the same consideration as it would be accorded, if made a part of the original contract of insurance. Title & Trust Co. v. United States Fidelity & Guaranty Co., 138 Or. 467, 1 P.2d 1100, 7 P.2d 805. The law of the forum is controlling. Horwitz v. New York Life Insurance Co., 80 F.2d 295 (9 Cir. 1935).

It has been said that the language of this section is so plain, and its meaning so clear, that the use of the rules of statutory construction is not permitted. School District No. 106 of Clackamas County v. New Amsterdam Casualty Co., 132 Or. 673, 288 P. 196; Whitlock v. United States Inter-Insurance Association, 138 Or. 383, 6 P.2d 1088.

Counsel for defendant, in support of their argument for the allowance of attorney fees, argue that the title to the original act[2] gives substance to the claim for attorney fees. I find nothing in the title which is in conflict with the provisions of the act, nor, for that matter, can I find anything which casts doubt on the exceptionally clear and explicit language of the body of the act.

 That the statute requires the filing of a proof of loss as a condition precedent to the recovery of attorney fees, is apparent. General Accident Fire & Life Assurance Corp. v. Continental Casualty Company, 287 F.2d 464, 468 (9 Cir. 1961). That the statute requires a recovery by the *plaintiffs*, or one in the "position of a *plaintiff*" is made clear by the opinion of the Oregon court in Schweigert v. Beneficial Standard Insurance Co., 204 Or. 294, 282 P.2d 621 (1955). It is my belief that the Oregon Supreme Court, if faced with this precise problem, would hold that defendant is not in the position

---

1. ORS 736.325.
 "*Recovery of attorney fees in action on policy.*
 "(1) If settlement is not made within six months from the *date proof of loss is filed* with an insurance company or fraternal benefit society and a suit or action is brought in any court of this state upon any policy of insurance of any kind or nature, including a policy or certificate issued by a fraternal benefit society as defined in ORS 740.010, *and the plaintiff's recovery exceeds the amount of any tender* made by the defendant in such suit or action, then the plaintiff, in *addition to the amount that he may recover*, shall be allowed and shall recover as part of his judgment such sum

as the court or jury may adjudge to be reasonable as attorney's fees.
 "(2) If attorney fees are allowed as herein provided and on appeal to the Supreme Court by the defendant the judgment is affirmed, the Supreme Court shall allow to the respondent such additional sum as the court shall adjudge reasonable as attorney fees of the respondent on such appeal."

2. Chapter 110, General Laws of Oregon, 1919.
 "To provide for the collection of a reasonable attorney's fee in all suits or actions brought upon any policy of insurance in any of the courts of the state of Oregon."

of a *"plaintiff"*, within the meaning of the language employed in the statute. If, as argued by plaintiff, the language of the title to the act casts a doubt on the legislative purpose in the body of the act, the defendant's position would not be improved. Called into play would be the rule of *inclusio unius est exclusio alterius*, which rule would defeat defendant's argument for a recovery by anyone other than those specifically mentioned in the statute. In any event, all rules of construction, including those which favor an insured under an insurance contract, must give way to the primary and inflexible rule that all contracts, including those of insurance, are to be construed so as to ascertain and declare the true intent of the parties. All other rules are secondary. I-L Logging Co. v. Manufacturers and Wholesalers Indemnity Exchange, 202 Or. 277, 317, 318, 273 P.2d 212, 275 P.2d 226. That rule must be imposed if the statute is read into and becomes part of the contract. Even if the statute is interpreted by itself, and not as part of the insurance policy, the same fundamental rule is applicable. In other words, it is then the Court's duty to ascertain and give effect to the intention of the Legislature. Cary v. Metropolitan Life Insurance Company, 141 Or. 388, 17 P.2d 1111 (1933); Fidelity & Deposit Co. of Maryland v. Arenz (U.S.Or.1933) 290 U.S. 66, 54 S.Ct. 16, 78 L.Ed. 176. It is my conclusion that the Oregon Legislature never intended the statute to cover an award of attorney fees on these facts.

■ It is suggested that a Federal Court has inherent authority to make a grant of attorney fees in a proper case. This rule, in my judgment, does not apply in diversity cases. Even if the rule is applicable, it is one of discretion, and I would exercise my discretion against such a grant in this case.

Defendant's application for attorney fees is denied.

It is so ordered.